UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

In the Matter of
STEPHANIE WARREN,                                      : 07 Civ. 9812 (JGK)
Parent of Disabled Child, MICHAEL WARREN,  :
                                                                           : ECF Case
              Plaintiff,                                            :
                                                                           :
          - against -                                              :
                                                                           : **DECLARATION OF**
NEW YORK CITY DEPARTMENT OF           : **MATTHEW LENAGHAN**
EDUCATION,                                                   :
                                                                           :
              Defendant.                                        :

------------------------------------------------------------- x

      MATTHEW LENAGHAN, hereby declares the following to be true and correct under the penalties of perjury:

      1.     I am an attorney admitted to the practice of law in this district and am Deputy Director of Advocates for Children of New York, Inc. (AFC), one of the Amicus organizations in the above-captioned matter. I submit this declaration in support of the motion for leave to file an <u>amicus curie</u> brief in support of Plaintiff's motion for summary judgment.

      2.     AFC works with low-income families to secure quality and equal public education services for their children. AFC provides a range of direct services, including free individual case advocacy, technical assistance, and trainings, and also works on institutional reform of educational policies and practices. One of AFC's primary activities is providing free legal representation to low-income parents of students with disabilities at due process proceedings under the Individuals with Disabilities Education Act (IDEA) to ensure that their children receive the free appropriate public education (FAPE) to which they are entitled.

3. Partnership for Children's Rights (PFCR) and New York Legal Assistance Group (NYLAG) also provide representation to low income families in due process administrative proceedings under the IDEA.

4. Through my experience as Deputy Director of Advocates for Children and through my direct representation of parents, I routinely learn of situations in which the Department of Education (the "DOE") has failed to comply with its legal obligation to provide FAPE to students with disabilities.

5. In my experience, parents sometimes wait several months or longer to receive a placement offer for their child after an Individualized Education Program (IEP) recommendation is made for placement in a special education class. In numerous instances, the parent has not received a placement offer for their child by the start of the school year. Often, even when a placement offer is received, the placement is not appropriate for the student.

6. The DOE's failure to comply with its obligations under state law and under a 1979 Judgment of the Eastern District of New York in Jose P. v. Ambach, No. 79-270 (Dec. 14, 1979) to place students with disabilities in a timely manner were documented in a consultant report submitted to the DOE in September 2005. *See* Thomas Hehir, et al., Comprehensive Management Review and Evaluation of Special Education (Sep. 20, 2005) (Hehir Report), *available at* http://www.uft.org/chapter/teacher/special/documents/Final%20Hehir%20Report%20092005.pdf. According to the Hehir Report, 92% of students with disabilities were awaiting placement for over 60 days during the month of September 2004, which marked the start of the 2004-05 school year. *See id.* at 65.

7. When students are awaiting placement, they either have to remain at home or in inappropriate public school placements.

8. Unilateral placement at a private school is one of the few options available to parents whose children have not received a placement offer or are in an inappropriate placement.

9. Even though our clients cannot afford to pay the tuition at private schools themselves, some non-state approved private schools that serve students with disabilities are aware of the inequities of this system for parents without financial resources and are concerned with maintaining a diverse student body. These schools' enrollment contracts consistently impose a legal responsibility on the parent to pay tuition, but, as a practical matter, the schools accept our clients' children without any tuition payment up-front with the understanding that the parent will seek tuition payment from the DOE.

10. In such cases, the student enrolls at the private school and starts to attend while an attorney from our office files an impartial hearing request on behalf of the parent seeking direct payment for the school tuition. In some cases, the DOE agrees to settle the claims prior to a hearing and pays the school tuition directly to the school. In the other instances, the case goes forward to an impartial hearing for tuition payment. Direct tuition payment will be made only where (1) the DOE settles the case or (2) an impartial hearing officer finds that the DOE failed to provide a student with a free appropriate public education.

11. Nonetheless, the State Review Officer has never awarded tuition payment to be made where the parent has not already paid the tuition.

12. Since 2004, I have represented parents of students with disabilities in the impartial hearing process approximately 110 times. Of these cases, approximately 60 involved placement by my client of his or her child at a non-state approved private school and a request that an impartial hearing officer order the DOE to pay the cost of the student's tuition directly to

the private school.

13. In the eight years since I have been doing this work, I have witnessed the beneficial impact of the availability of direct tuition payment on the students whom our organization serves. After these students are placed in a setting that appropriately addresses their disabilities, they are able to make meaningful progress, as the following examples of students whose parents I represented demonstrate.

14. Stan Z. is a highly fragile student classified as emotionally disturbed. In November 2004, the Department of Education offered Stan a placement at a state-approved private school with significant numbers of behaviorally aggressive students and that did not offer the high level academic instruction appropriate to Stan's learning levels. Without prospective payment from the DOE to a non-approved private school, Stan's parent would have had to accept the inappropriate placement offered by the DOE because she could not afford the private school's tuition. During the two years that Stan attended this school with tuition payment from the DOE, he received an appropriate education and excelled academically, making the honor roll before graduating, and realizing his dream of joining the military, a dream he could not have fulfilled without a high school diploma.

15. During the 2003-2004 and 2004-2005 school years, Melvin M. was in general education, where he was failing his classes. Melvin has an auditory processing disability that the DOE had neither diagnosed nor addressed in his school placement. When the 2004-05 school year ended, Melvin was informed that he needed to go to summer school but was offered no special education services. His August 2005 IEP recommended him for private school placement. When he had not received any placement by the fall, however, his mother unilaterally placed him in a non-state approved private school with services that Melvin needed. Without

direct payment of Melvin's tuition from the DOE, Melvin would have been unlikely to attend high school in the fall of 2005, as the DOE failed to find a placement for him.

    16. In elementary school, Kahlil S., a student subsequently diagnosed with severe Traumatic Brain Injury and Attention Deficit Disorder, was on the accelerated track and graduated a year early. In middle school, staff and faculty began to note changes in Kahlil's behavior as he became increasingly distracted and confrontational and his academic performance deteriorated, culminating in several suspensions during the 2002-2003 school year. After his third suspension in March 2003, Kahlil's mother requested that the school create an IEP for him. In April 2003, Kahlil was asked to leave his middle school permanently and thereafter went through a period of being either entirely out of school or placed inappropriately by the DOE. Kahlil was subsequently recommended for placement in a state-approved private school, but the DOE only placed him in a suspension center that did not have appropriate educational services. Kahlil's mother unilaterally placed him at a non-state approved private school, which offered the specially tailored, academically challenging, and emotionally supportive environment that Kahlil needed. With the appropriate educational supports and services, Kahlil graduated from this private school with a high school diploma in four years.

    17. Alexis S. is a student classified as speech impaired who was placed by the DOE at a state-approved private school for middle school. After completing the eighth grade in June 2005, Alexis aged out of her DOE private school placement but the DOE failed to offer her a new placement, despite repeated requests by the parent. In September 2005, after the school year had already begun and with Alexis out of school, her mother unilaterally placed her in a non-state approved private school. Without a direct tuition payment from the DOE, Alexis would have remained without an appropriate placement. Alexis has made significant progress

since starting at her new school.

18. Hunter H. is an elementary school student with significant health issues and learning needs. Hunter started out in a general education placement in a public school with various related services, including a health paraprofessional. After a year in that setting, Hunter had not progressed. Hunter's second-grade teacher indicated to her mother that the public school placement was inappropriate. After her mother expressed displeasure with her educational placement to school officials, the DOE offered Hunter a placement at a school that was already full, was not grouped properly by functional level, and had a reading curriculum that did not appropriately address Hunter's needs. As a result, her mother unilaterally placed her at a non-state approved private school for the 2005-2006 school year. The private school provides multi-sensory instruction in all lessons and groups students by their ability-level with small student-teacher ratios. Hunter's mother began to see a marked difference in her reading ability. Hunter has continued progressing with highly trained teachers helping her make the gains necessary to prepare for secondary school. Without prospective payment, Hunter would have remained in public school, not making progress towards her reading goals.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 20, 2008.

_____
MATTHEW LENAGHAN, ESQ.