UNITED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

Stephanie Warren,
Parent of Disabled Child Michael Warren

                                Plaintiff

     -against-

New York City Department of Education,

                              Defendant
-----------------------------------------------------------X

**ATTORNEY DECLARATION**

07-Civ-09812 (JGK)

STATE OF NEW YORK    )
                              )ss.:
COUNTY OF NEW YORK  )

      ANTON PAPAKHIN hereby declares, under penalty of perjury, that:

      1.    I am an attorney duly admitted to the Bars of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York. I am the attorney of record representing the plaintiff. I am fully familiar with the facts herein. I make this declaration in support of plaintiff's motion for summary judgment pursuant to 20 U.S.C. §1415(i)(2)(A).

      2.    I annex hereto as Exhibit "A", Declaration of Stephanie Warren, parent of disabled child Michael Warren.

      3.    The attached declaration is submitted as "additional evidence" pursuant to 20 U.S.C. §1415(i)(2)(C)(ii).

Dated: Brooklyn, New York
         June 20, 2008

/s *[signature]*
Anton Papakhin (AP 4680)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In the Matter of
Stephanie Warren,
Parent of Disabled Child Michael Warren

                      07-Civ-09812 (JGK)

                    Plaintiff

        -against-               **AFFIDAVIT IN SUPPORT
                                                   OF MOTION FOR
                                                   SUMMARY JUDGMENT**

New York City Department of Education,

                    Defendant
------------------------------------------------------------X

STATE OF NEW YORK    )
                                 )
COUNTY OF KINGS      )

      I, STEPHANIE WARREN, being duly sworn states:

1.      I am the plaintiff in this case and the mother of Michael Warren, a child with a disability, who was born on December 11, 1989.

2.      Michael has been a special education student since kindergarten. He is classified as learning disabled.

3.      Michael was a tenth-grade student at Bay Ridge Preparatory School ("Bay Ridge") during the 2005-2006 school year. Bay Ridge is a private mainstream school that has a separate special education program called the Bridge.

4.      Michael has attended the Bridge program since 2001 to the present day.

5.      Michael attended New York City public schools since kindergarten and until he was in the fifth grade.

6.      He was in a self-contained special education class in public school through the 2000-2001 school year (fifth grade).

**EXHIBIT A**
**1**

7. Michael had a long history of learning difficulties in the special education class starting from the first grade. I became very concerned about Michael when he was held over in the first grade special education class due to academic underachievement.

8. Michael became withdrawn and shy. It was then that Michael first realized he was different from other students in his class.

9. Michael did not seem to improve in the special education class. However, he was promoted through second, third, fourth and fifth grades in P.S. 222.

10. In the fifth grade, I realized that Michael was not learning in the special education class. Michael was barely reading and writing on the second grade level.

11. I refused to place Michael in the special education class proposed for the sixth grade and unilaterally enrolled him in the Bridge program at Bay Ridge. Michael was placed in a smaller special class in the Bridge program and received additional remedial reading services in the group of three students. He also received daily planning and organization sessions which have helped to address his distractibility and poor organizational skills.

12. Michael has made slow but steady academic progress at Bay Ridge.

13. Bay Ridge's tuition at the time was approximately $ 25,000. I had no money to pay it.

14. I requested, through my educational advocate, Joan A. Harrington, a impartial hearing in order to obtain tuition payment for Bay Ridge from the DOE.

15. I also signed an enrollment agreement with Bay Ridge pursuant to which Bay Ridge agreed to enroll my son, Michael, and did so on the understanding that I

**EXHIBIT A**

2

was unable to pay the Bay Ridge tuition and that I would instead seek prospective or direct payment of tuition from the New York City DOE.

16.  I was not then and am not now able to pay the Bay Ridge tuition in advance and then get repaid by the DOE. My educational advocate has always asked for an order requiring the DOE to pay the school directly.

17.  It has always been my understanding that I remain legally responsible for paying the Bay Ridge tuition if I am not ultimately successful in obtaining an order requiring the DOE to pay it.

18.  Fortunately, the DOE resolved my request for tuition payment and agreed to pay the costs of Michael's attendance at Bay Ridge during the 2001-2002 school year.

19.  The DOE continued to recommend placement in the special education class for the 2002-2003, 2003-2004, and 2004-2005 school years. I continued to challenge the DOE's program recommendation as inappropriate for Michael by requesting impartial hearings and seeking tuition payments at Bay Ridge.

20.  The DOE continued to resolve my requests for hearings by agreeing to pay the costs of Michael's tuition for those school years.

21.  On June 2, 2005, I participated in the Committee on Special Education ("CSE") review meeting that was held in order to develop an individualized education plan ("IEP") for Michael and recommend an appropriate educational program for him for the 2005-2006 school year.

22. The CSE classified Michael as learning disabled and recommended that he be placed in a special education class in a community school with a 15:1 staffing ratio for the 2005-2006 school year.

23. I disagreed with the program recommendation of a special class in a community school with a 15:1 staffing ratio and informed the Committee that such program was not appropriate for Michael.

24. Bay Ridge personnel also informed the CSE that Michael required individualized learning instructions in a smaller classroom setting. In addition, Bay Ridge teacher informed the CSE of Michael's needs for additional remedial reading sessions and daily planning and organization meetings to address Michael's needs.

25. Furthermore, Bay Ridge and I disagreed with the CSE regarding Michael's Present Levels of Performance as reflected on his IEP developed at the June 2, 2005 meeting. This information was taken from the psycho-educational evaluation administered by the CSE on May 9, 2005. I brought Michael to the CSE for the testing on that date.

26. According to the psycho-educational evaluation, Michael was writing on the 3rd grade level and reading on the 2nd grade level. This data was grossly inaccurate and did not reflect Michael's academic levels of performance.

27. Despite being informed about inaccurate testing scores, the CSE proceeded and made program recommendation with academic goals and objectives based on inaccurate functioning levels.

28. Michael has not been tested by the CSE since May 9, 2005. The CSE offered no alternative program or additional supports and services to the recommended program for the 2005-2006 school year.

29. On August 15, 2005, I signed the enrollment agreement for Michael's continued attendance at Bay Ridge for the 2005-2006 school year.

30. I acknowledged the costs of Bay Ridge annual tuition in the amount of $26,350 and signed my name in the signature block indicating that "the parent **responsible for payment** must sign" (emphasis added) (Parent Ex. B).

31. By signing the enrollment contract, I acknowledged that in the event I was offered a public school placement, I had chosen to reject said public school placement in favor of placing my child in Bay Ridge. This acknowledgement refers only to the program that was recommended for my child at the June 2, 2005 CSE review, not to any future program recommendations. I did not agree to reject any public placement in the future.

32. The language in this enrollment agreement is substantially the same as every other agreement I signed with Bay Ridge for the school years before and after the 2005-2006 school year.

33. For example, I signed an identical enrollment agreement for Michael's attendance at Bay Ridge for the 2006-2007 school year on September 1, 2006, and initiated a fair hearing to seek prospective tuition payment from the DOE as I did in 2005. (A true and accurate copy of the Enrolment Contract for the 2006-2007 school year is attached hereto).

**EXHIBIT A**

**5**

34. The program recommendation for the 2006-2007 school year was a special education class with 15:1 student to teacher ratio.

35. In June, 2007, my advocate informed me that my claim for direct tuition payment had been referred to the Office of Legal Services for settlement and the DOE agreed to pay the costs of Michael's tuition at Bay Ridge for the 2006-2007 school year.

36. As in the past, I was unable to pay Bay Ridge Michael's tuition costs before the commencement of the school year. In order to accommodate my financial situation, Bay Ridge agreed to wait for payment of Michael's tuition until I was able to complete a claim for tuition reimbursement against the DOE.

37. I also agreed to fully participate with all aspects of the CSE process, including the production of any cancelled checks (if my situation changed and I became able to pay tuition costs). As an example of my participation, I went to observe the CSE's recommended placement despite the fact that I did not feel it was appropriate to meet Michael's needs.

38. While my advocate requested prospective tuition payments to Bay Ridge for the 2005-2006 school year, the impartial hearing was not completed until the end of the 2005-2006 school year. At that time I had yet to make any tuition payments to Bay Ridge for the 2005-2006 school year.

39. As of the date of this affidavit, I have not made any tuition payments to Bay Ridge for the 2005-2006 school year.

40. I am aware that my advocate prevailed at the impartial hearing level and the IHO ordered the DOE to pay the costs of my son's tuition directly to Bay Ridge.

**EXHIBIT A**

6

I am also aware that the DOE appealed the IHO's decision to the Office of State Review in Albany and Bay Ridge has not received tuition payments from the DOE.

41.    At this time and based on the State Review Officer's underlying unfavorable decision, I am indebted to Bay Ridge for the full tuition amount for the 2005-2006 school year.

42.    I had sought application materials from the Hebrew Free Loan Society in anticipation of securing a loan for my son's tuition for the 2005-2006 school year, however I was informed that the Hebrew Free Loan Society provides interest free loans to parents who have obtained a final decision from an impartial hearing officer in their favor or entered into a signed stipulation of settlement with the Department of Education. Since the decision from the impartial hearing officer was reversed by the State Review Officer, I was unable to obtain such a loan to pay Michael's tuition at Bay Ridge.

43.    Bay Ridge never advised me that they were waiving Michael's tuition costs for the 2005-2006 school year.

44.    Despite my numerous requests, Michael has never been awarded any scholarships to lessen the costs of attendance at Bay Ridge, whether for merit or for need. Rather I was told that scholarships are not available for students at the Bridge program.

45.    I strongly disagree with the SRO's decision finding that I failed to provide the DOE with sufficient notice of my rejection of the public school placement and my intent to enroll the student in a private placement at public expense.

**EXHIBIT A**

**7**

46. I have been giving the DOE notice of Michael's worsening situation and of my dissatisfaction with the placement in the special education class since Michael's first year in the public school system.

47. Although I did not send a written notice to the CSE, at the CSE review held on June 2, 2005, I repeatedly informed the CSE members that the program recommendation of a special education class with 15:1 staffing ratio was insufficient to meet Michael's learning needs.

48. In addition, Bay Ridge teachers informed the CSE that Michael has made significant academic improvement at Bay Ridge as a result of a smaller educational setting, individualized supports built into the Bridge program, remedial reading instructions and daily planning and organization meetings.

49. I have always cooperated with the Committee on Special Education in order to secure an appropriate education for my disabled child. I have always participated in CSE meetings, observed recommended placements, and made Michael available for any testing required by the CSE. Also as discussed above, I have always expressed my concerns regarding my son's education and his needs.

50. I don't believe that my omission to provide the ten days written notice to the CSE in any way prevented the DOE from preparing an IEP for my child. My actions did not contribute to nor caused the CSE's failure to offer my son an appropriate program.

51. I believe that a special education class with a 15:1 student to teacher ratio is the only program available for my son in a public school. It has been recommended over and over regardless of Michael's individualized needs or abilities.

52. I believe that Michael was appropriately placed in the Bay Ridge Preparatory School. He received daily organization meetings, individual and group reading instructions, one-to-one academic support built in his classrooms, family seminars, and counseling sessions that helped to raise his self-esteem.

53. Without such services, Michael would have undoubtedly failed and dropped out of school. For these reasons, I respectfully request that this Court annul and reverse the State Review Officer's findings to the extent they determined the equities did not favor the Plaintiff and did not direct the Defendant to pay Michael's tuition to Bay Ridge Preparatory High School for the 2005-2006 academic year and order the New York City Department of Education to pay the tuition costs associated with my son's appropriate placement in the Bay Ridge Preparatory School for the 2005-2006 school year.

_____
Stephanie Warren

_____
Subscribed and sworn to before me
this 20th day of June, 2008

**ANTON PAPAKHIN**
Notary Public, State of New York
No. 02PA6125601
Qualified in Kings County
Commission Expires April 18, 2009

**EXHIBIT A**
**9**

# Bay Ridge Preparatory School

Lower and Middle School    8101 Ridge Boulevard Brooklyn, NY 11209 718-833-9090
High School    7420 4th Avenue Brooklyn, New York 11209 718-833-5839

## ENROLLMENT CONTRACT

Bay Ridge Preparatory School agrees to enroll Michael Warren into the 11th Grade Bridge Program for the academic year beginning September 2006 and ending June 2007.

1. The tuition is the sum of **$ 27,300.00** plus a book fee of **$400.00** for a total of **$27,700.00**.

2. The Parent acknowledges that, in the event they have been offered a public school placement for their child, the Parent has chosen to reject said public school placement in favor of placing their child in Bay Ridge Preparatory School. Furthermore, the Parent acknowledges that, due to his/her financial status, he/she is dependent upon receiving prospective payment from the New York City Department of Education (the DOE) following an Impartial Hearing in order to make the payment of tuition indicated in item 1.

3. I understand that in signing this Enrollment Contract for the coming academic year, I am agreeing to accept the rules and regulations of Bay Ridge Preparatory School. I also understand that Bay Ridge Preparatory School reserves the right to dismiss a student from the school either for failure to adhere to any of the policies or for actions determined as unacceptable by the Headmaster of Bay Ridge Preparatory.

4. The Parent further acknowledges that the Bay Ridge Preparatory School has assumed the risk that the Parent may not receive prospective payment from the DOE or that said payment will be delayed beyond the term of the 2006-2007 school year. In consideration of Bay Ridge Preparatory's assumption of such a risk, the Parent agrees to cooperate fully in all efforts by his/her attorney and Bay Ridge Preparatory schools personnel to secure funding from the DOE for his/her child's placement at the Bay Ridge Preparatory School. The parent understands and agrees that, in the event that the Parent does not co-operate fully in the process, Bay Ridge Preparatory School may elect, upon 30 days notice, to terminate the child's enrollment at the Bay Ridge Preparatory School.

5. Full cooperation by the parent n the funding process, as referred to herein, includes but is not limited to:

    a) Participation in Committee on Special Education Meetings and Impartial Hearings

    b) Prompt Execution of all necessary forms such as Stipulations of Settlement and Related Services Authorization Forms.

    c) Documentation of all tuition payments with copies of cancelled checks for tuition payments

    d) Documentation of financial status, such as Tax Returns, W2 Wage and Income Statements, Social Security Income Statements and other documents reflecting receipt of public assistance.

PARENT (S) OR GUARDIAN'S SIGNATURE (S): (In the case of two parents both must sign)
(In the case of divorced parents the parent responsible for payments must sign)

Signature: *Stephanie Warren*    Date    9/1/06
Print Name: Stephanie Warren    Relationship to student    mother
Address: 626 Mayfair Drive South, Bklyn, NY
Telephone: 718-251-8333    Business Telephone    718-377-6161

Signature: _____    Date _____
Print Name: _____    Relationship to student _____
Address: _____
Telephone: _____    Business Telephone _____

**EXHIBIT A**
**10**