UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

In the Matter of Stephanie Warren, Parent of Disabled
Child Michael Warren,

$\qquad$ 07 CV 9812 (JGK)

$\qquad\qquad\qquad\qquad$ Plaintiff,

$\qquad\qquad$ -against-

New York City Department of Education,

$\qquad\qquad\qquad\qquad$ Defendant.

------------------------------------------------------------------------ x

### DEFENDANT NEW YORK CITY DEPARTMENT OF EDUCATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR <u>SUMMARY JUDGMENT</u>

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
David A. Rosinus, Jr.
Attorney for Defendant
100 Church Street, Room 2-305
New York, New York 10007
(212) 788-8316

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ............................................................................................................. 3

    POINT I ................................................................................................................ 6
        PLAINTIFF LACKS STANDING TO ASSERT EITHER A REIMBURSEMENT CLAIM
        OR A DIRECT PAYMENT CLAIM

    POINT II ............................................................................................................... 8
        PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE IDEA
        A.   Plaintiff Did Not Seek Tuition Reimbursement in her Due Process Complaint......... 8
        B.   Plaintiff's Complaint Fails to State a Reimbursement Claim Under the IDEA ......... 8
        C.   Plaintiff's Complaint Fails to State a Direct Payment Claim Under the IDEA........ 10

    POINT III............................................................................................................. 11
        EQUITABLE CONSIDERATIONS FAVOR DENYING PLAINTIFF'S CLAIM FOR
        TUITION COSTS

CONCLUSION.......................................................................................................... 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

In the Matter of Stephanie Warren, Parent of Disabled
Child Michael Warren,

                                                    07 CV 9812 (JGK)
                                    Plaintiff,

                    -against-

New York City Department of Education,

                                    Defendant.

------------------------------------------------------------------------- x

**DEFENDANT NEW YORK CITY DEPARTMENT OF EDUCATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Plaintiff, the parent of a student with a disability, brings this action seeking to appeal an administrative decision by the New York State Department of Education Office of State Review.  In that decision, the State Review Officer ("SRO") denied Plaintiff's claim for the cost of tuition at the Bay Ridge Preparatory School ("Bay Ridge"), a private school at which Plaintiff unilaterally placed her son Michael Warren ("the Student") for the 2005-2006 school year.  Plaintiff then filed the instant Complaint seeking tuition costs under the Individuals with Disabilities Education Act ("IDEA") for that school year.  Defendant New York City Department of Education ("Defendant" or "DOE") submits this memorandum of law in support of its motion for summary judgment to affirm the SRO's decision.

The essential issue before the Court is whether Plaintiff has standing to pursue her claim for tuition costs under the IDEA even though she has not paid tuition and is under no obligation to pay tuition.  The contract that Plaintiff signed with Bay Ridge plainly deprives

Plaintiff of standing.  As discussed more fully below, that contract relieved Plaintiff of any obligation to pay tuition by stating that Plaintiff depended upon tuition payment by the DOE and that Bay Ridge assumed the risk of non-payment by the DOE.  As a result, Plaintiff has not paid any tuition and will not have to pay any tuition.  Because Plaintiff has not been aggrieved, she lacks standing to obtain the relief sought herein.

Second, even if this Court were to determine that Plaintiff does have standing to commence this action, which it should not, Plaintiff still fails to state a claim for tuition costs. Here there is no payment to reimburse, and therefore no reimbursement claim under the IDEA. Plaintiff's Complaint also fails to state a direct payment claim because, inter alia, direct payment is only available when a parent would otherwise be responsible for paying tuition costs.

Finally, Plaintiff's claim for tuition costs should be denied because she cannot sustain her burden of proof under Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359 (1985), Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993), and their progeny. Specifically, Plaintiff cannot prove that the equities in this case favor an award of tuition costs. At the underlying administrative appeal, the SRO found that the equities precluded an award of tuition costs to Plaintiff because Plaintiff failed to giver proper notice under the IDEA that she was rejecting the DOE's proposed placement and was seeking to enroll the Student in a private placement at public expense.  As discussed more fully below, this Court should affirm the SRO's decision and award summary judgment to DOE.

## STATEMENT OF FACTS

The Court is respectfully referred to Defendant's Local Rule 56.1 Statement of Material Facts, dated June 20, 2008 ("56.1 Statement"), for a statement of those material facts which are not in dispute, and on which this motion is based.

## ARGUMENT

## STANDARD OF REVIEW

Congress enacted the IDEA, 20 U.S.C. § 1400 et seq., to promote the education of children with disabilities.  It is undisputed that the Student qualifies under the IDEA as a child with a disability.  Students who qualify must receive a "free appropriate public education" ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), comprising special education and related services provided at public expense that meet the standards of the State educational agency, and that are provided in conformity with an Individualized Education Program ("IEP").  20 U.S.C. § 1401(9).

New York State defines special education as "specially designed individualized or group instruction or special services or programs . . . to meet the unique needs of students with disabilities," 8 N.Y.C.R.R. § 200.1(ww), and "related services" as "developmental, corrective, and other supportive services as are required to assist a student with a disability . . . ."  8 N.Y.C.R.R. § 200.1(qq).  State boards of education are required to prepare an IEP for each student with a disability, setting forth the goals and objectives for the student, and the recommended educational program and related services to attain those goals and objectives.  20 U.S.C. § 1414(d).  Both federal and State special education laws require that a child with a disability be educated in the least restrictive environment, that is, with non-disabled peers to the extent feasible and appropriate.  20 U.S.C. § 1412(a)(5); N.Y. Educ. Law § 4402.  Special education and related services should be "tailored to meet the unique needs of the child with a disability and be reasonably calculated to enable the child to receive educational benefits."  Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998); see also Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 207 (1982).  The amount, or level, of educational benefits that must be provided is not specified in the IDEA.  Walczak, 142 F.3d at 130.  The Supreme Court has held that programs need not maximize the potential of

a child with a disability to provide the child with FAPE.  Rowley, 458 U.S. at 197 n.21; Walczak, 142 F.3d at 130.

In New York, the responsibility for developing students' IEPs has been granted to the local Committee on Special Education ("CSE").  20 U.S.C. §§ 1401(8), 1414(b)(2),(d);  8 N.Y.C.R.R. § 200.4(b).  If the recommendations in the IEP prepared by a CSE do not provide the student with FAPE, a parent may select a private school program for the student and seek to obtain tuition costs from the local board of education.  20 U.S.C. § 1400(d)(1)(A).  A board of education may be required to pay for the educational program selected by the parent only if (1) the educational program recommended by the board of education was inadequate or inappropriate; (2) the program selected by the parent was appropriate, and (3) the equities support the parent's claim.  These three factors, or prongs, comprise the "Burlington/Carter" test.  Burlington, 471 U.S. 359;  Carter, 510 U.S. 7.  Parents who unilaterally place their children in private schools do so at their own financial risk.    Burlington, 471 U.S. at 373-74.  Parents making unilateral placements must conform to certain procedural requirements, and any failure to do so is taken into account when weighing equitable considerations.  See M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 (2d Cir. 2000).

A parent seeking tuition costs may request an impartial due process hearing before an Impartial Hearing Officer ("IHO").  20 U.S.C. § 1415(f)(1)(A);  New York Education Law § 4404(1).  The IHO's decision may be appealed to the SRO, whose decision is final in the administrative review process.  20 U.S.C. § 1415(g)(1); New York Education Law § 4404(2).  After the completion of this administrative review process, the aggrieved party may appeal the decision of the SRO in state or federal district court.  20 U.S.C. § 1415(i)(2)(A).  In the appeal, both parties may move for summary judgment, even if there are disputed issues of material fact.

Viola v. Arlington Cent. Sch. Dist., 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006).  A parent seeking tuition costs for a unilateral placement has the burden of proof, as the burden falls on the party seeking the relief.  Schaffer v. Weast, 546 U.S. 49, 62 (2005).[1]  The IDEA broadly authorizes courts to grant relief deemed appropriate.  20 U.S.C. § 1415(e)(2); see Muller v. Comm. on Special Educ., 145 F. 3d 95, 104 (2d Cir. 1998).

Federal courts are required to decide IDEA actions on the basis of the preponderance of evidence developed at the administrative proceedings, and may consider additional evidence presented by the parties.  20 U.S.C. §1415(i)(2)(C);  M.S. v Yonkers Bd. of Educ., 231 F.3d 96, 102 (2d Cir. 2000), cert. denied, 532 U.S. 942 (2001).  While IDEA administrative determinations are subject to "independent" judicial review, the Supreme Court and the Second Circuit have emphasized that they "have interpreted the IDEA as strictly limiting judicial review of state administrative proceedings."  See Viola, 414 F. Supp. 2d at 377-78 (citing Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380-81 (2d Cir. 2003);  Rowley, 458 U.S. at 204-08;  Walczak, 142 F.3d at 129).  A district court review of an SRO decision "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206;  accord Walczak, 42 F.3d at 129.  Federal courts "are expected to give 'due weight' to state administrative proceedings," M.S., 231 F.3d at 102.  The federal courts should defer to the expertise of state and local educational agencies and they are required to defer to the findings made at the state administrative proceedings, including the final decision of the state authorities.  See Muller, 145 F.3d at 101.

---

[1] Pursuant to New York Education Law § 4404(c), the Department of Education would now have the burden of proof in an impartial hearing regarding tuition reimbursement, "except that a parent . . . seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement."  New York Education Law § 4404(1)(c).  However, this provision went into effective on October 14, 2007 and thus did not govern the administrative proceedings in this case.

## POINT I

## PLAINTIFF LACKS STANDING TO ASSERT EITHER A REIMBURSEMENT CLAIM OR A DIRECT PAYMENT CLAIM

Plaintiff lacks standing to seek reimbursement under the IDEA because there is nothing to reimburse Plaintiff for. Plaintiff also lacks standing to seek direct tuition payment because Plaintiff has no debt and owes no money to Bay Ridge. Indeed, Plaintiff's son completed the 2005-2006 school year at Bay Ridge pursuant to a contract that relieved Plaintiff of any obligation to pay tuition to Bay Ridge.

In order to have standing to pursue a claim, a plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The Fourth Circuit has held that, in reimbursement cases under the IDEA, "[s]tanding doctrine requires that reimbursement should flow only to those who actually expend resources, whether it be the parents or the child," and a plaintiff who has suffered no out-of-pocket loss for private education tuition lacks standing to assert a claim under the IDEA. Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 299 (4th Cir. 2005) (emphasis and internal citations omitted).

In Emery, the plaintiff student received private educational services paid for by his parent's insurance policy. Id. The plaintiff's parent in Emery paid no money for the educational services rendered and suffered no diminution in his lifetime insurance benefits. Id. at 299-300. The Court in Emery thus found that, "[s]ince plaintiff has no legally cognizable injury in fact, he has no standing to sue for reimbursement." Id. at 300. Similarly, in this case, the Student has been provided with a private school education for the 2005-2006 school year at no cost to Plaintiff.

Plaintiff has suffered no cognizable injury in fact whatsoever and will not be affected financially by the outcome of this litigation. Specifically, Plaintiff has not paid any money to Bay Ridge for the Student's 2005-2006 tuition because Plaintiff has never owed any money to Bay Ridge for that tuition. Under the terms of the contract that Plaintiff signed with Bay Ridge for the Student's 2005-2006 enrollment, Plaintiff acknowledged that she was "dependent upon receiving prospective payment" from the DOE in order to pay the Student's tuition. 56.1 Statement ¶ 11. The contract further stated that Bay Ridge "has assumed the risk that the [Plaintiff] may not receive prospective payment from the DOE" or that payment would be delayed. Id.

Thus, the contract provided that either the DOE would pay for the Student's tuition or else that no one would pay. No matter what decision is reached here, Plaintiff will not have to pay any money whatsoever to Bay Ridge or to any other party for the Student's 2005-2006 private school tuition. Just as in Emery, therefore, the parent in this case has not lost any money and will not lose any money, has no cognizable injury in fact, and lacks standing to pursue a reimbursement claim.

Similarly, because Plaintiff is not obligated to pay any money whatsoever for the Student's 2005-2006 tuition, she lacks standing to assert a direct payment claim. Since Plaintiff does not owe any money to Bay Ridge, she has no injury in fact that would be remedied by the DOE making direct payment to Bay Ridge.[2]

Therefore, Plaintiff has suffered no legally cognizable injury in fact and lacks standing to bring either a reimbursement claim or a direct payment claim.

---

[2] To the extent that Plaintiff is making a claim on behalf of Bay Ridge, insofar as she is seeking direct payment to the school, the SRO correctly held that Plaintiff cannot make a claim on behalf of Bay Ridge, "a private entity that lacks standing under the IDEA to maintain a claim . . . in its own right." 56.1 Statement ¶ 25 (the SRO decision cites Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 299 (4th Cir. 2005); Piedmont Behavioral Health Center LLC v. Stewart, 413 F. Supp. 2d 746, 755-56 (S.D. W.Va. 2006)); Malone v. Nielson, 474 F.3d 934, 937 (7th Cir. 2007)).

## POINT II

## PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE IDEA

Even if this Court finds that the Plaintiff has standing to pursue either claim under the IDEA, her Complaint fails to state a claim on the merits because a parent cannot be awarded tuition costs under the IDEA for money she has not paid and does not have to pay.

### A.    Plaintiff Did Not Seek Tuition Reimbursement in her Due Process Complaint

As an initial matter, Plaintiff's due process complaint only requested direct payment from the DOE, not reimbursement.  56.1 Statement ¶ 17.  Because Plaintiff did not raise a claim for reimbursement at the IHO level, she has failed to exhaust administrative remedies and cannot assert her reimbursement claim in this Court.  See 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise"); 8 N.Y.C.R.R. § 200.5(j)(1)(ii); Garro v. Dep't of Educ., 23 F.3d 734, 737 (2d Cir. 1994) ("Before seeking judicial review in the federal courts, persons claiming to be aggrieved by procedural violations of the IDEA must first exhaust their administrative remedies."); see also Application of the New York City Department of Education, Appeal No. 07-046, at 7-8; Application of the New York City Department of Education, Appeal No. 08-018, at 11.

### B.    Plaintiff's Complaint Fails to State a Reimbursement Claim Under the IDEA

Plaintiff's Complaint fails to state a reimbursement claim.  The Burlington/Carter line of cases on which Plaintiff relies explicitly provide, pursuant to the IDEA, that reimbursement to parents may be proper under certain circumstances.  See 20 U.S.C. § 1412(a)(10)(C)(ii); Sch. Comm. of Burlington v Dep't of Educ., 471 U.S. 359, 369 (1985)

(holding that the IDEA grants a reviewing court "the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the [IDEA]"); Florence County School District Four v. Carter, 510 U.S. 7, 12 (1993) (quoting Burlington's holding); see also Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 32-33 (1st Cir. 2006) ("Under normal IDEA principles, [the parent] is [] not entitled to be reimbursed for educational expenses that she has yet to pay."); id. at 28 (noting that the only monetary awards available under the IDEA are "[a]wards of compensatory education and equitable remedies that involve the payment of money, such as reimbursements to parents for expenses  incurred on private educational services to which their child was later found to have been entitled") (emphasis added) (quoting Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003)).  What is clear is that, under Burlington/Carter and their progeny, before even turning to the merits of a parent's claim for tuition reimbursement, there must first be something to reimburse the parent for.

Here, there is not.  The private school tuition contract in this case essentially awarded the Student a scholarship, with the understanding that Bay Ridge would take whatever money it could get from DOE, and that Plaintiff would assist Bay Ridge in its efforts.  See 56.1 Statement ¶ 11.  Under the terms of that contract, therefore, Plaintiff owed absolutely no money. The IDEA does not reimburse private schools for scholarships that they choose to offer.  Cf. Christen G. by Louise G. v. Lower Merion Sch. Dist., 919 F. Supp. 793, 804 (E.D. Pa. 1996) (subtracting scholarship amounts from overall tuition in order to determine reimbursable tuition amounts); see also Applications of a Child with a Disability and of the Board of Education, Appeal Nos. 96-21 and 96-23 (holding that a parent who receives a scholarship from a school

offering a scholarship to a child is not entitled to reimbursement or prospective funding for the scholarship, because the parent is not obligated to reimburse the school for the amount of the scholarship).[3]

## C.    Plaintiff's Complaint Fails to State a Direct Payment Claim Under the IDEA

Plaintiff's Complaint does not state a claim for direct payment, either.  In <u>Connors v. Mills</u>, in which the Northern District held that direct payment to the school would be proper upon a showing of financial need once the <u>Burlington</u> criteria had been met, the parent was responsible for paying tuition.  <u>Connors v. Mills</u>, 34 F. Supp. 2d 795, 805-06 (N.D.N.Y. 1998). Here, Plaintiff is not responsible for paying any tuition.  Simply put, Plaintiff is not in debt, and any claim for direct payment to the school is thus not Plaintiff's claim.  Indeed, the SRO properly held that any claim for direct payment in this case would be Bay Ridge's claim, and that Bay Ridge lacks standing to assert any such claim under the IDEA.  <u>See supra</u> note 2.

Although the IHO examined Plaintiff's claim in light of the holding in <u>Connors</u>, that holding does not apply to this case.  <u>Connors</u> held that the purpose of the IDEA would be frustrated if a school district did not pay tuition prospectively, for a parent who would be unable to front the tuition and then seek reimbursement.  <u>Connors</u>, 34 F. Supp. 2d at 805-06.  In <u>Connors</u>, the parent was responsible for paying tuition; she simply had not paid it yet.  Here, as the contract with Bay Ridge makes clear, Plaintiff is not responsible for paying tuition in the first place.  Although <u>Connors</u> expanded <u>Burlington</u>/<u>Carter</u> tuition payment to include prospective

---

[3] Of course, a private school that provided education to the student whose rights are at issue is not a party entitled to relief under the IDEA in the first place.  <u>See, e.g.</u>, <u>Application of a Child with a Disability</u>, Appeal No. 06-035.  <u>See also supra</u> note 2.

direct payment as well as reimbursement, it did not expand such payment to cases where a parent owes no tuition money to begin with.[4]

Moreover, even assuming arguendo that prospective funding were available to Plaintiff under Connors—which it is not as a matter of law—such prospective funding could only be plausibly permitted where a parent's "financial circumstances eliminate the opportunity for unilateral placement in the non-approved school." Id. (emphasis added). That is manifestly not the case here, where Plaintiff placed the Student at Bay Ridge, the school accepted him, and he attended.

Because Plaintiff has paid no money and is under no obligation to pay any money for the Student's 2005-2006 tuition, and because the IDEA only authorizes tuition payment when a parent has paid or is responsible for paying tuition, Plaintiff fails to state either a reimbursement claim or a direct payment claim under the IDEA.

## POINT III

### EQUITABLE CONSIDERATIONS FAVOR DENYING PLAINTIFF'S CLAIM FOR TUITION COSTS

Even if this Court finds that Plaintiff has standing to pursue a claim for tuition costs and that Plaintiff's Complaint has stated such a claim, which it should not, Plaintiff's claim should be denied because, as the SRO properly held, the equities preclude awarding tuition costs to Plaintiff.[5]

---

[4] It is also worth noting that Connors provided for prospective direct payment. In this case, where the impartial hearing began after the end of the 2005-2006 school year, Plaintiff could only be asking for retrospective direct payment, which Connors did not provide for. See 56.1 Statement ¶ 18.

[5] As an initial matter, Plaintiff's Complaint states that the SRO committed reversible error because, Plaintiff alleges, the issue of notice was not raised before the SRO and the SRO considered the issue sua sponte. Complaint ¶ 49. However, Defendant's Verified Petition for its appeal to the SRO stated that "tuition reimbursement may be reduced or denied when parents fail to raise the appropriateness of an IEP in a timely manner" and cited 20 U.S.C. § 1412(a)(10)(C)(iii), the provision of the IDEA that includes the notice requirement. Verified Petition ¶ 72. Thus, the notice issue was raised by Defendant before the SRO.

The third prong of the <u>Burlington</u> test requires the parent to demonstrate that the equities favor his or her claim for tuition costs.  See, e.g., <u>Bettinger v. New York City Bd. of Educ.</u>, 2007 U.S. Dist. LEXIS 86116, at *19 (S.D.N.Y. Nov. 20, 2007) (<u>citing Burlington</u>, 471 U.S. at 367-70); <u>see also</u> <u>Schaffer</u>, 546 U.S. at 51 (burden to prove each <u>Burlington</u> prong lies with the party seeking relief).

Because Plaintiff did not provide Defendant with the required notice rejecting the Defendant's proposed placement and declaring her intent to enroll the Student in a private school at public expense, and because Plaintiff did not cooperate with the Defendant in its efforts to provide FAPE, the equities weigh heavily against awarding Plaintiff any tuition costs for the 2005-2006 school year.  Indeed, a review of the record indicates that Plaintiff did not cooperate with or give notice to Defendant because she never intended to send the Student to a public school at all and was merely attempting to cooperate just enough to be eligible to receive tuition costs.

The IDEA provides that a court may reduce or deny tuition costs if the parent does not notify the IEP team at the last meeting before the relevant school year that she rejects its proposed placement and intends to enroll her child in a private school at public expense.  20 U.S.C. § 1412(a)(10)(C)(iii)(I).[6]  In this case, the IEP for the student was formulated during the

---

[6] The relevant portion of 20 U.S.C. § 1412(a)(10)(C)(iii)(I) reads as follows:

> (iii) Limitation on reimbursement
>
> The cost of reimbursement [for private educational services] . . . may be reduced or denied--
>
> (I) if--
>
> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their

CSE meeting held on June 2, 2005.  56.1 Statement ¶ 5.  However, the record indicates that Plaintiff never gave the required notice to the CSE.  Id. ¶ 9.  Although Plaintiff testified that she informed the CSE at the June 2nd meeting that she felt its proposed placement at James Madison High School ("James Madison") was inappropriate, id. ¶ 8, that statement alone does not constitute adequate notice without also explicitly rejecting the proposed placement and informing the CSE of her intent to enroll the Student in a private school at public expense.

Indeed, Plaintiff herself testified that she only rejected the proposed placement after viewing it in October 2005.  Id. ¶ 14.  Thus, she could not have rejected the CSE's placement and given proper notice at the June 2nd meeting.  Moreover, Plaintiff testified that she did not contact the CSE at the time of her rejection of its placement or at any time thereafter.  Id. ¶ 15.

The first and only written notice of rejection and unilateral placement that appears in the record is Plaintiff's January 12, 2006 due process complaint, in which Plaintiff's advocate notified Defendant that Plaintiff had re-enrolled the student at Bay Ridge for the 2005-2006 school year and would be seeking tuition costs.  Id. ¶ 16.  This notice came approximately four months after the start of the school year in question, in clear violation of 20 U.S.C. § 1412(a)(10)(C)(iii)(I).  See supra note 6; see also 56.1 Statement ¶ 17.

The notice requirement contained in 20 U.S.C. § 1412(a)(10)(C)(iii)(I) serves an essential purpose in the IDEA's framework because prompt notice enables the education department or school district to make every effort to remedy any problems arising out of a

---

child, including stating their concerns and their intent to enroll their child in a private school at public expense; or

(bb) 10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa) . . . .

proposed IEP.  See, e.g., M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 69 (2d Cir. 2000) ("Because M.C.'s parents failed to place in issue the appropriateness of M.C.'s IEPs [for at least eight months], it is impossible to determine with any certainty whether [their] expenditures were indeed necessary, or whether a prompt complaint . . . might have obviated the need for those expenditures.") (internal quotations and citation omitted); see also Greenland Sch. Dist. v. Amy N., 358 F.3d 150, 161 (1st Cir. 2004) ("The purpose of the notice requirement is to give public school districts the opportunity to provide FAPE before a child leaves public school and enrolls in private school.") (citing, inter alia, Patricia P. v. Bd. of Educ., 203 F.3d 462, 468 (7th Cir. 2000) and Schoenfeld v. Parkway Sch. Dist., 138 F.3d 379, 381-82 (8th Cir. 1998)).   Before Defendant should be obligated to pay for a private placement, it should be given a fair opportunity to provide FAPE through a public placement.  Because Plaintiff failed to provide the required notice, Defendant did not get that opportunity.

In a similar case before the First Circuit, the plaintiff parents were in the process of developing an IEP for their daughter for her sixth grade school year, which had already started at that time.  Greenland, 358 F.3d at 155.  The IEP contemplated that their daughter would return to the public school during her sixth grade year.  Id. at 155.  In November of that school year, however, when the IEP was being finalized, the parents filed a due process hearing request.  Id. at 155. The request sought, inter alia, private tuition reimbursement for their daughter's entire sixth grade school year.   Id. at 156.   The First Circuit denied the parents' claim for reimbursement on notice grounds because, inter alia, the parents had not given the school district sufficient opportunity to develop an IEP.  See id. at 159-60 (quoting Patricia P. v. Bd. of Educ., 203 F.3d 462, 469 (7th Cir. 2000) ("parents who, because of their failure to cooperate, do not allow a school district a reasonable opportunity to evaluate their disabled child, forfeit their

claim for reimbursement for a unilateral private placement")).  <u>Greenland</u> highlights the importance of the notice requirement: the parent cannot withdraw in the middle of negotiations that are intended to create an appropriate IEP and expect to be reimbursed for a unilateral placement.

The IEP process is supposed to be a collaborative process in which the parent plays an essential role.  <u>Burlington</u>, 471 U.S. at 368 ("The IEP is to be developed by a school official qualified in special education, the child's teacher, the parents or guardian, and, where appropriate, the child.  In several places the [IDEA] emphasizes the participation of the parents in developing the child's education program and assessing its effectiveness.").  On these facts, however, it is apparent that Plaintiff never intended to cooperate with or accept any proposed placement from Defendant.  On August 15, 2005, Plaintiff signed a contract with Bay Ridge for the Student's enrollment at Bay Ridge for the 2005-2006 school year, providing, <u>inter alia</u>, that she would reject any public school placement for her son that she was offered.  56.1 Statement ¶¶ 10-11.  By her own admission, Plaintiff did not visit James Madison High School, the CSE's proposed public school placement, until October of 2005.  <u>Id.</u> ¶ 13.  Thus, Plaintiff did not even observe the DOE's proposed placement until approximately two months <u>after</u> she was contractually obligated to reject it.

Indeed, Plaintiff's Complaint essentially admits that Plaintiff had always planned for the Student to continue attending Bay Ridge.  In the section of the Plaintiff's Complaint that discusses the issue of notice, the Complaint states that "Defendant had actual knowledge that [the Student] would continue to attend Bay Ridge Prep, the school he had attended since his sixth grade year, prior to the start of the 2005-2006 school year."  Complaint ¶ 50.  This paragraph very nearly admits outright that Plaintiff intended to send the Student to Bay Ridge all along, and

was only attempting to comply with the IDEA's procedures in order to receive tuition payment from Defendant.

In a recent Southern District decision issued by Judge Paul A. Crotty, this Court held that the plaintiffs had not satisfied the equities prong because the parents in that case had not cooperated adequately with school officials in the effort to provide their child with FAPE. Bettinger, 2007 U.S. Dist. LEXIS 86116, at *26-27.

In Bettinger, which also concerned parents who sought tuition costs for the 2005-2006 school year, the Court found that the parents "made plans to send [their son] to West End [the parents' unilateral placement] as early as January 2005, and had no plans to entertain the [placement] options the City presented." Id. at *27. Ms. Bettinger, the student's mother, "did not engage with" schools that her son's IEP named as possible placements, failing to make her son available for interviews at one of those schools and not visiting the school by herself. Id. at *28-30. The Bettingers began to seek reimbursement for their private school tuition payments on August 15, 2005, which was "three weeks before the 2005-2006 school year began." Id. at *30. Strikingly, Plaintiff here signed the contract that obligated her to unilaterally place her son at Bay Ridge on the very same date. 56.1 Statement ¶ 10. The Bettinger Court cites this date, along with the plaintiffs' failure to visit the City's proposed placements by that date, as evidence that "the [plaintiffs] had already made up their mind that [their son] would attend West End [their unilateral placement] for the entire year." Bettinger, 2007 U.S. Dist. LEXIS 86116, at *31. As discussed above, Plaintiff in this case had not visited the DOE's proposed placement by August 15, 2005, either. Thus, concluding that Plaintiff intended for her son to attend Bay Ridge all along, and that she did not cooperate adequately with Defendant's efforts to provide FAPE as a result, is equally justified here.

- 16 -

In summary, Plaintiff's refusal to notify the CSE of her objections to its proposed placement or even to visit that proposed placement before she made a contractually binding unilateral placement clearly indicates that Plaintiff never intended to accept any proposed placement from Defendant and that she consequently did not cooperate adequately with Defendant's efforts to provide FAPE.  Indeed, as argued above, Plaintiff's failure to notify Defendant that she rejected the proposed placement stymied Defendant's efforts.  Under the IDEA, a parent must make a good faith effort to secure FAPE, not simply go through the motions she thinks necessary to secure public financing for her child's private school tuition.  As this Court stated in Bettinger, "parents seeking reimbursement must comply with the law throughout the entire process and not merely to the point where they think they have achieved what they want."  Id. at *26.

Because parental cooperation is essential in any effort to provide a child with FAPE, and because Plaintiff in this case refused even to consider Defendant's proposed public school placement or to notify Defendant that she rejected that placement before making a unilateral placement, the equities preclude her claim for tuition costs.

<u>**CONCLUSION**</u>

Based on the foregoing, Defendant New York City Department of Education respectfully requests that its motion for summary judgment be granted, and that the Court grant Defendant such other and further relief as the Court deems just and proper.

Dated:          New York, New York
                June 20, 2008

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                         City of New York
                                        Attorney for Defendant
                                        100 Church Street, Room 2-305
                                        New York, New York  10007
                                        (212) 788-8316


                                        By:    _____s/_____
                                               David A. Rosinus, Jr. (DR 2311)
                                               Assistant Corporation Counsel


To:     Anton Papakhin (by ECF)
        Attorney for Plaintiff
        1359 Coney Island Avenue
        Brooklyn, New York 11230
        Tel.: (917) 270-1403
        Fax: (718) 252-2216

cc:     Timothy M. Mahoney (by ECF)
        Law Office of Timothy Mahoney
        P.O. Box 6451
        Astoria, New York 11106
        Tel.: (646) 522-8520
        Fax: (718) 204-7564