UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Stephanie Warren,
Parent of Disabled Child Michael Warren

                              Plaintiff

            -against-

New York City Department of Education,

                             Defendant
-----------------------------------------------------------X

Docket No.
07-Civ-09812 (JGK)

STATEMENT OF MATERIAL
FACTS PURSUANT TO LOCAL
CIVIL RULES, RULE 56.1

## STATEMENTS OF MATERIAL FACTS
## PURSUANT TO LOCAL CIVIL RULES, RULE 56.1

Anton Papakhin (AP 4680)
Attorneys for Plaintiffs
Tikhomirov & Roytblat, PLLC
1400 Avenue Z– Suite 403
Brooklyn, NY 11235
Tel: 718.376.9500 or 917.270.1403
Fax: 718.676.5649

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Stephanie Warren,
Parent of Disabled Child Michael Warren

                           Plaintiff

-against-

New York City Department of Education,

                           Defendant
------------------------------------------------------------X

Docket No.
07-Civ-09812 (JGK)

STATEMENT OF MATERIAL
FACTS PURSUANT TO LOCAL
CIVIL RULES, RULE 56.1

      Plaintiff submits this statement of material facts as to which she contends there is no genuine issue to be tried.

      1. Plaintiff is the mother of Michael Warren, child with a disability born on December 11, 1989. Defendant is the New York City Department of Education ("Defendant" or "DOE") responsible for identifying all disabled children of school age in the district and providing them with a free and appropriate public education ("FAPE"). Michael's eligibility for special education services and classification as a student with learning disability are not in dispute in this proceeding (8 NYCRR 200.1[zz][6]).

      2. In the 2005-2006 school year, Michael was a tenth-grade student in the Bridge Program of Bay Ridge Preparatory School ("Bay Ridge"), a private mainstream school with a separate special education program designed to maximize the learning potential of students with disabilities. (*See* Decision of Impartial Hearing Officer James P. Walsh, Esq. ("IHO Decision"); Exhibit D, E, F).

3. From kindergarten through fifth grade, Michael attended New York City Public School No. 222 where he was classified as learning disabled and received services in a special education class. (*See* IHO Decision at 3; *See also* Transcript of 7/19/06 Hearing at 18; 30; Warren Affidavit ¶ 5)[1]. Michael had a long history of learning difficulties in the public school (Tr. at 19, 30; Warren Aff. ¶ 5-7).

4. Due to academic underachievement, the student was held over in the first grade which negatively affected his self-esteem (Id; Warren Aff. ¶ 7-8). Despite continued learning difficulties and poor academic progress, Michael was promoted through second, third, fourth and fifth grades in P.S. 222 (Tr. at 30-31; Warren Aff. ¶ 9).

5. In the fifth grade, Plaintiff decided that Michael was not receiving an appropriate education in the special education class. Despite finishing fifth grade, Michael was barely reading on a second grade level (Warren Aff. ¶ 10).

6. Following the completion of Michael's fifth grade year, Plaintiff rejected Defendant's proposed sixth grade placement in the same special education program and unilaterally enrolled Michael in the Bridge program at Bay Ridge (Tr. at 21, 30-31; Warren Aff. ¶ 11).

7. Michael has since attended Bay Ridge to the present day.

8. The Commissioner of Education has not approved Bay Ridge as a school with which school districts may contract to instruct students with disabilities (see 8 NYCRR 200.1[d], 200.7) *See* Decision of State Review Officer Paul F. Kelly ("SRO Decision").

9. Plaintiff was financially unable to pay the tuition at Bay Ridge Prep and seek reimbursement from defendant under Florence County School District 4 et. al. v. Carter by

---

[1] All subsequent references to the transcript of the July 19, 2006 proceedings appear as "Tr. at ___. All subsequent references to the Affidavit of Stephanie Warren are designated "Warren Aff. ¶ ___."

3

Carter, 510 U.S. 7 [1993]). Therefore, Plaintiff requested Defendant to make payments directly to Bay Ridge Prep for the 2001-2002 school year. (*See* Complaint at ¶ 15; Warren Aff. ¶ 13-16).

10. Defendant settled Plaintiff's claim for direct tuition payment and "agreed to subsidize Michael's attendance at Bay Ridge during the 2001-2002 school year." (*See* Answer at ¶ 16).

11. Thereafter, Defendant continued to classify Michael as learning disabled and recommend placement in a special education class for the 2002-2003, 2003-2004, and 2004-2005 school years. (*See* Warren Aff. ¶ 19; Exhibit H).

12. Plaintiff continued to challenge Defendant's placement in a special education class as inappropriate for Michael by requesting impartial hearings and seeking direct tuition payments for Michael's attendance at Bay Ridge for the 2002-2003, 2003-2004, and 2004-2005 school years. (*See* Warren Aff. ¶ 19).

13. Defendant settled Plaintiff's claims for direct tuition payments and "agreed to subsidize Michael's attendance at Bay Ridge during the 2002-2003, 2003-2004, and 2004-2005 school years." (*See* Answer at ¶ 18; Warren Aff. ¶ 20).

14. On June 2, 2005, Defendant's Committee on Special Education ("CSE") held an annual review meeting in order to develop an individualized education plan ("IEP") and recommend an appropriate educational program for the 2005-2006 school year. (IHO Decision at 5; SRO Decision at 2).

15. The CSE classified the student as learning disabled and renewed its program recommendation of a special education class in a community school with 15:1 staffing ratio for the 2005-2006 school year (Id.; Exhibit 1).

16. At the CSE review meeting Plaintiff disagreed with the program recommendation of a special class in a community school with 15:1 staffing ratio and expressed her belief that such program was not appropriate for Michael. Plaintiff strongly believed that Michael required additional academic supports and services that were not available in Defendant's special education class (Tr. at 24, 55; Warren Aff. ¶ 23-24).

17. Plaintiff testified at the impartial hearing that representatives from Bay Ridge also informed the IEP team members that Michael required individual instructions in a smaller setting then a special education class with 15:1 student to teacher ratio. (Tr. at 24-25, 41; IHO Decision at 7; Warren Aff. ¶ 24).

18. Plaintiff and Bay Ridge strongly disagreed with the CSE regarding Michael's academic functioning levels as reflected on the psycho-educational evaluation conducted by Defendant's CSE as part of triennial reevaluation. (IHO Decision at 6, 7; Warren Aff. ¶ 25-28). Consequently, the Present Levels of Performance contained on Michael's IEP developed on June 2, 2005 were not accurate and resulted in development of defective academic goals and objectives (Id.).

19. Bay Ridge personnel participated at the IEP meeting "for less than ten minutes, having been asked for their input by the District Representative and, when such had been provided, were excused from the meeting and no longer available to take part in Committee determinations regarding program or placement" (IHO Decision at 7; Tr. at 42). The academic goals and objectives were not developed at the IEP meeting but were prepared by the attending school psychologist after the meeting (IHO Decision at 7).

20. Despite obvious disagreement between the CSE and Bay Ridge with respect to Michael's academic functioning levels, the CSE proceeded to recommend its typical program recommendation – special education class with 15:1 student to teacher ratio (Warren Aff. ¶ 27).

21. On or about June 8, 2005 Plaintiff received a letter containing a Final Notice Recommendation ("FNR") offering Michael a seat in a special education class with 15:1 staffing ratio at James Madison High School (Tr. at 25; Exhibit 6).

22. Although Plaintiff believed that the recommended program was not appropriate for Michael, she made an appointment to visit James Madison High School in order to observe the actual class proposed for the student (Tr. at 26-28; Warren Aff. ¶ 37).

23. Defendant has not offered to reevaluate Michael in order to assess his true academic functioning levels. To date Defendant's CSE has not administered any psychological or educational tests on Michael in order to assess his needs and abilities. Defendant continued to recommend special education class with 15:1 student to teacher ratio for Michael for the 2006-2007 and 2007-2008 school years (Warren Aff. ¶ 28; 34).

24. On August 15, 2005, Plaintiff signed a contract with Bay Ridge for Michael's continued attendance in the 2005-2006 school year (Exhibit B; Tr. at 58-59; Warren Aff. ¶ 29). Plaintiff acknowledged the costs of Bay Ridge annual tuition in the amount of $26,350 and signed her name in the signature block indicating that "the parent **responsible for payment** must sign" (emphasis added) (Warren Aff. ¶ 30).

25. On September 8, 2005, Michael started classes in the tenth grade at Bay Ridge. (Exhibit C).

26. In the beginning of October, 2005, Plaintiff visited, observed, and discussed the recommended placement at James Madison High School with a special education coordinator

6

(Tr. at 26-27; Warren Aff. ¶ 37). Based on the visit, Plaintiff's fears were confirmed that the DOE's recommended placement was not appropriate for Michael.

27. In a letter dated January 12, 2006, Plaintiff, through her lay advocate, requested an impartial hearing seeking direct tuition payment to Bay Ridge for the 2005-2006 school year (Tr. at 28-29, 53-55).

28. After receiving Plaintiff's due process request, Defendant did not reconvene its CSE and offered no alternative program or any additional services or accommodations (Warren Aff. ¶ 28).

29. An impartial hearing was held on July 19, 2006, September 14, 2006, and December 19, 2006 (IHO Decision at 1; SRO Decision at 2). Although Plaintiff's due process complaint was filed on January 12, 2006, numerous adjournments requested by both parties delayed the impartial hearing originally set to commence in April 2006 and delayed subsequent hearing dates (IHO Decision at 2; SRO Decision at 2). Plaintiff was represented by a non-attorney advocate throughout the entire impartial hearing.

30. On March 2, 2007, IHO James P. Walsh issued the Findings of Fact and Decision awarding direct tuition payment to Bay Ridge for the 2005-2006 school year finding, inter alia, that the District failed to offer FAPE to the student, that Bay Ridge was an appropriate placement for the student, and that equitable considerations supported an award of tuition payment to Bay Ridge (IHO Decision at 11-12).

31. The IHO concluded that Defendant failed to offer Plaintiff's son a FAPE upon the grounds, inter alia, that the June 2, 2005 IEP was improperly constituted and inappropriately prepared, the levels of academic performance were totally inaccurate, and defective academic

goals and objectives were developed after the CSE review in violation of the Regulations of the Commissioner (IHO Decision at 6-7).

32. At the time of the impartial hearing, the student had already successfully completed his tenth grade school year and Plaintiff had yet to make any payment to Bay Ridge because she was financially unable to front the $ 26,350 of tuition costs for the 2005-2006 school year (IHO Decision at 9, 11; Tr. at 29; Warren Aff. ¶ 38-39).

33. In his decision, the IHO interpreted the terms of the enrollment contract between plaintiff and Bay Ridge to mean that Plaintiff incurred no financial obligation to pay her son's tuition because the enrollment contract expressly provided that Bay Ridge assumed the risk that the parent would not recover prospective payment from the Department of Education (IHO Decision at 9-10).

34. Relying on holdings from two Federal Court cases, Susquenita School District v. Raelee, 96 F.3d 78 (3d Cir. 1996) and Connors v. Mills, 34 F. Supp. 795 (N.D.N.Y. 1998), the IHO determined that it was appropriate to award tuition payment to a private school which assumed a parent's financial risk of unilateral placement before a parent has satisfied the criteria for an award of tuition reimbursement under Burlington/Carter (IHO Decision at 11-12).

35. The IHO acknowledged the decision rendered by the Office of State Review in Application of a Child with a Disability, Appeal No. 06-035, where the SRO declined to order direct payment to Bay Ridge after the parent satisfied all Burlington/Carter prerequisites, yet ordered reimbursement to the parent upon parent's presentation of proof of payment of such tuition – a payment such parent had established she could not make (IHO Decision at 11-12).

36. The IHO expressly declined to follow the SRO's reasoning finding it "of little purpose to impose such illusory obligation upon Parent." The IHO reasoned that the Individuals

with Disabilities Education Act ("IDEA") empowered him with equitable remedies, which were not limited to reimbursement alone (Id).

37. In appealing the IHO's decision to the SRO, Defendant, for the first time, argued that Plaintiff lacked standing to commence this proceeding because she incurred no financial obligation for the student's tuition as determined by the IHO. Defendant supported its argument by claiming that the student had already completed the 2005-2006 school year without any payments made to the school for his tuition.

38. As alternate defenses, Defendant contended that it offered the student a FAPE and that equitable considerations preclude an award of tuition reimbursement because Plaintiff had signed the contract agreeing to reject any public school placement in favor of placing her child in Bay Ridge (*See* Defendant's Verified Petition to the SRO ¶ 59 through 86).

39. Nowhere in its Verified Petition to the SRO, Defendant asserted that Plaintiff failed to comply with 20 U.S.C. § 1412[a][10][C][iii][I] requiring parents to provide the ten day notice of their intent to remove their child from the public school and their intent to enroll the child in a private school at public expense, and that such failure precluded Plaintiff's request for tuition funding (Id.).

40. With respect to the second Burlington/Carter criterion, Defendant did not appeal the IHO's finding that Bay Ridge is an appropriate placement for the student (Id.).

41. Plaintiff argued in her opposition to the DOE's petition that Defendant failed to offer Michael a FAPE and that equitable considerations did not preclude an award of direct tuition funding (See Plaintiff's Point I and III in Memorandum of Law in Support of Respondent's Verified Answer in SRO Appeal No. 07-032; see also Respondent's Verified Answer and Cross Appeal ¶ 87-88).

9

42. Plaintiff cross-appealed the portion of the IHO's decision wherein he found the parent incurred no financial risk for Michael's attendance at Bay Ridge for the 2005-2006 school year (See Plaintiff's Point IV in Memorandum of Law in Support of Respondent's Verified Answer in SRO Appeal No. 07-032; see also Respondent's Verified Answer and Cross Appeal ¶ 90-93).

43. Specifically Plaintiff argued that the IHO erroneously interpreted Plaintiff's acknowledgement in the enrollment agreement that Bay Ridge "assumed the risk that the parent may not receive prospective payment from the DOE or that said payment will be delayed beyond the term of the 2005-2006 school year" to absolve Plaintiff from any financial responsibility for payment of Michael's tuition at Bay Ridge in case she was unsuccessful in her application for "prospective payment" (Id.).

44. According to the plain language of the enrollment agreement between Plaintiff and Bay Ridge, the latter only assumed the risk that the parent may not receive **prospective** (emphasis added) payment from the DOE or that said payment **will be delayed** beyond the term of the 2005-2006 school year (Id.). Bay Ridge assumed no more than that (Id.).

45. In his decision dated July 5, 2007, the SRO found no reason to disturb the IHO's finding with respect to the first Burlington/Carter criterion that is Defendant failed to offer plaintiff's child a FAPE for the 2005-2006 school year. (SRO Decision at 4).

46. The SRO affirmed the IHO's decision with respect to the appropriateness of Bay Ridge to meet Michael's needs as it was not contested on appeal (Id.).

47. However, the SRO sustained Defendant's appeal in part on the ground that equitable considerations did not support Plaintiff's claim for direct tuition payment to Bay Ridge

and that said payment is not authorized under the IDEA because Plaintiff incurred no financial obligation for her son's tuition at Bay Ridge (SRO Decision at 4-6).

48. Specifically the SRO, *sua sponte,* reversed the IHO's award of tuition payment to Bay Ridge on the ground that plaintiff failed to comply with the ten day notice requirement under 20 U.S.C. § 1412[a][10][C][iii][I].

49. The SRO made no finding with respect to the issue argued on appeal - namely whether equitable considerations favored Defendant on the ground that Plaintiff signed the enrollment agreement with Bay Ridge in which she explicitly "agreed to reject, out of hand, any offer of public school placement made by the DOE" (See Defendant's Verified Petition to the SRO ¶ 73; SRO Decision).

50. The SRO further stated in his decision that even if he found that plaintiff had prevailed with respect to the Burlington criteria, he would not have ordered direct tuition payment to Bay Ridge because such relief is not authorized under IDEA (See SRO Decision at 5-6).

51. On July 27, 2006, Defendant's CSE held an annual review meeting in order to develop an IEP and recommend an appropriate educational program for Michael for the 2006-2007 school year. The CSE classified the student as learning disabled and renewed its program recommendation of a special education class in a community school with 15:1 staffing ratio for the 2006-2007 school year. (*See* Warren Aff. ¶ 34).

52. Plaintiff again disagreed with the recommended program, re-enrolled Michael at Bay Ridge for the 2006-2007 school year, and renewed her tuition enrollment agreement with Bay Ridge on September 9, 2006, which included an increase in Bay Ridge tuition costs but

otherwise contained the same language as the 2005-2006 school year agreement (*See* Add. Exhibit A to Warren Aff. ¶ 33).

53. On May 17, 2007 Plaintiff, through her lay advocate, requested a due process hearing seeking direct tuition payment to Bay Ridge for the 2006-2007 school year.

54. Defendant settled Plaintiff's claim for the 2006-2007 school year tuition, agreeing to pay the costs of Michael's tuition at Bay Ridge as it had done prior to the 2005-2006 school year (*See* Warren Aff. ¶ 35).

55. Plaintiff appealed the SRO's decision to this Court on November 5, 2007. Defendant filed its answer on December 21, 2007. Defendant did not appeal any of the SRO's findings to this Court.

Dated: Brooklyn, New York
       June 30, 2008

                                                Respectfully submitted,

                                                Tikhomirov & Roytblat, PLLC
                                                By: Anton Papakhin (AP 4680)
                                                Attorneys for Plaintiffs
                                                1400 Avenue Z– Suite 403
                                                Brooklyn, NY  11235
                                                Tel: 718.376.9500 or 917.270.1403
                                                Fax: 718.676.5649