UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of
STEPHANIE WARREN, Parent of Disabled Child
MICHAEL WARREN,

        Plaintiff,

- against -

NEW YORK CITY DEPARTMENT OF
EDUCATION,

        Defendant.

07 CV 9812 (JGK)

## RESPONDING MEMORANDUM OF LAW *AMICUS CURIAE*

Shawn V. Morehead (SM 5428)
Miranda Johnson (MJ 9281)
Erika Palmer
Arlen Benjamin-Gomez
Advocates for Children of New York, Inc.
151 W. 30th Street, 5th Floor
New York, New York 10001
Tel: (212) 947-9779

Yisroel Schulman (YS 3107)
Laura Davis (LD 8226)
New York Legal Assistance Group
450 West 33rd Street, 11th Floor
New York, New York 10001
Tel.: (212) 613-5040

Michael D. Hampden (MH 2359)
Sandra Weinglass (SW 8646)
Erin K. McCormack
Partnership for Children's Rights
271 Madison Avenue, 17th Floor
New York, New York 10016
Tel.: (212) 683-7999


Case 1:07-cv-09812-JGK   Document 27   Filed 08/11/2008   Page 2 of 9

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT

    I.    The DOE Misinterprets the Financial Circumstances Test
        Set Forth in <u>Connors</u>. ............................................................................ 1

    II.   The DOE's Interpretation Frustrates the Purpose
        of the <u>Connors</u> Decision and the IDEA. ............................................... 4

CONCLUSION ..................................................................................................... 6

## PRELIMINARY STATEMENT

The Amici seek leave of the Court to supplement our previous submission in order to respond to one claim raised for the first time by the Defendant New York City Department of Education (DOE) in its Memorandum of Law in Support of Its Motion for Summary Judgment. The DOE argues that Connors v. Mills, 34 F. Supp. 2d 795 (N.D.N.Y. 1998), precludes low-income parents from obtaining the remedy of direct tuition payment to a private school if the school enrolls the child pending the outcome of Individuals with Disabilities Education Act (IDEA) due process proceedings. Def. Mem. at 11. This claim represents a fundamental misreading of Connors that, if accepted, would result in precisely the injustice Congress sought to eradicate through the IDEA—the exclusion of disabled children from an appropriate education.

## ARGUMENT

### I.  The DOE Misinterprets the Financial Circumstances Test Set Forth in Connors.

In Connors, the United States District Court for the Northern District of New York determined that prospective tuition payment (tuition payment made directly to the private school[1]), like tuition reimbursement, is a remedy available under the IDEA. 34 F. Supp. 2d at 804–06. Citing the "'broad discretion'" conferred upon courts by the IDEA to grant "'such relief as the court determines is appropriate,'" id. at 806 n.7 (quoting Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 16 (1993) and 20 U.S.C. § 1415(e)(2) (1988)), the Northern District of New York declared that "once the

---

[1] While the facts in Connors would have required any direct payment to be prospective payment—i.e., payment covering periods of time during which the student had not yet attended the school, the court was concerned with the larger issue of whether direct payment to a private school is a remedy available under the IDEA, so that parents who are unable to front tuition costs are not precluded from relief. See Connors, 34 F. Supp. 2d at 805 ("The purpose of the Act, which is to ensure that every child receive a 'free and appropriate education' is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education.").

*Burlington* prerequisites relative to a non-approved private school are met, and a parent shows that his or her financial circumstances eliminate the opportunity for unilateral placement in the non-approved school, the public school must pay the cost of private placement immediately."[2] 34 F. Supp. 2d at 805–06.

The DOE urges this Court to adopt a reading of Connors that would make the remedy of direct tuition payment unavailable in circumstances where a parent, despite her limited financial means, is able to place her child in a private school during the pendency of IDEA due process proceedings. According to the DOE, if the private school accepts and enrolls the student pending the resolution of the parent's IDEA tuition claim, the parent's financial circumstances have not "eliminate[d] the opportunity for unilateral placement," and the parent does not qualify for direct tuition payment under Connors. Def. Mem. at 11. Under the DOE's analysis, it is not sufficient for the parent to prove that she is unable to pay the private school tuition in advance and await reimbursement from the school district—the parent must litigate her IDEA tuition claim *before* the student ever attends the private school or be barred from obtaining "Connors" funding.

The DOE's proffered direct-payment standard perverts the meaning of Connors. The Connors court explicitly defined its "financial circumstances" test as a "determination whether a parent is not financially able to front the cost of private placement." 34 F. Supp. 2d at 805 n.6. It is this showing of financial inability that a parent must make in order to qualify for direct payment, and it was the parent's failure to

---

[2] Under the standard set forth by the United States Supreme Court in School Committee of Burlington v. Department of Education, 471 U.S. 359 (1985), a school district may be required to pay for educational services obtained by a parent for his or her child if: (1) the services offered by the board were inadequate or inappropriate; (2) the services obtained by the parent were appropriate; and (3) equitable considerations support the parent's claim. Id. at 370, 374.

2

present evidence of an inability "to front the [private school] tuition" that caused the court in <u>Connors</u> to deny direct payment under the facts presented in that case. <u>Id.</u> at 806.

Certainly, the <u>Connors</u> court was concerned about a student's "substantive right of access to a free and appropriate public education," <u>id.</u> at 806, and the prospect that, without a remedy other than reimbursement, "a destitute child would be left in an inappropriate program because the parents would not be able to front the tuition of private placement," <u>id.</u> at 804. But that hardly leads to the conclusion that direct payment is *unavailable* where a student is rescued from this fate by a private school's willingness—in consideration of the family's indigent or low-income status—to enroll the student and adjust its payment deadlines to allow the parent to pursue a <u>Burlington/Connors</u> tuition claim through the IDEA due process procedures.

If this were the rule, as the DOE would have it, low-income parents would become second-class citizens under the IDEA, barred from the essential remedy of unilateral private school placement available to affluent families. On the one hand, low-income parents would be excluded from enrolling their child in a private school and seeking tuition reimbursement, as they lack the financial means to make tuition payments up front. On the other hand, no private school would agree to enroll a child from a low-income family pending the litigation of the parent's IDEA claim, as the mere fact of the student's attendance at the school would render direct payment unavailable under <u>Connors</u>.

3

## II. The DOE's Interpretation Frustrates the Purpose of the <u>Connors</u> Decision and the IDEA.

The DOE urges this Court to adopt a reading of <u>Connors</u> that would have the practical effect of eliminating the availability of private school placements for students from low-income families. Under the DOE's proposed standard, the only way a low-income parent could obtain private school tuition payment would be to (1) litigate her <u>Burlington/Connors</u> claim before the commencement of the school year; or (2) leave her child in an inappropriate public school placement pending the litigation of that claim.

The first scenario is virtually an impossibility. School districts will undoubtedly argue that <u>Burlington/Connors</u> cases brought before the commencement of the school year are not ripe. <u>See</u> <u>Application of a Child with a Disability</u>, Appeal No. 05-101 (ruling that a placement offer must arrive before the commencement of the school year);[3] <u>Application of a Child with a Disability</u>, Appeal No. 98-36 (ruling that a school district must offer an appropriate placement by the start of each school year).[4] And, as the Supreme Court noted in <u>Burlington</u>, "the review process is ponderous," and "[a] final judicial decision on the merits of an IEP will in most instances come a year or more after the school term covered by that IEP has passed." 471 U.S. at 370.

The second scenario, meanwhile, would produce precisely the injustice the <u>Connors</u> court sought to prevent—the relegation of disabled children to inappropriate

---

[3] Citations in this format are to the decisions of the Office of State Review. These decisions are accessible on the New York State Education Department website at http://www.sro.nysed.gov/decisionindex.htm.

[4] To add insult to injury, the DOE would likely claim that a parent whose child was languishing in an inappropriate public school placement lacked standing to seek private school tuition payment, as the parent would have made no tuition payments and would have "no debt and owe[] no money" to the school." Def. Mem. at 6.

4

public school placements, or to no placement at all, as a consequence of their parents' financial status.[5]  As the Connors court explained:

> In a situation where a parent does *not* have the adequate means to finance unilateral private placement and is told by a court years later that they were right, the victory would not only be empty but meaningless.
>
> . . . . Given the fragile state of many disabled children, and their dire need for constant and consistent care, even brief periods of inappropriate schooling could lead to tremendous educational, social, emotional, and psychological deterioration.  Families of greater economic means would not be faced with such a grim prospect.  It simply cannot be the case that an act designed to grant 'all' disabled children access to needed services would undermine that very goal by making such access dependent upon a family's financial situation.

Id. at 804 (emphasis in original).

Thus, the DOE's argument is as cruel in its implications as it is illogical in its reasoning.  Even in cases where, as here, a school district fails to provide an appropriate program (or provides no program at all), low-income parents would be precluded from enrolling their child in an appropriate private school and obtaining payment for the cost of that private school placement from the DOE.  This result is contrary to the intent of Connors, and the IDEA itself.  The Amici respectfully submit that it cannot be sanctioned by this Court.

---

[5] In Frank G. v. Board of Education, 459 F.3d 356, 364 (2d Cir. 2006), cert. denied, 128 S. Ct. 436 (2007), the Second Circuit Court of Appeals refused to require parents to "jeopardize their child's health and education" by requiring them to engage in the senseless exercise of first enrolling their child in an inappropriate public school placement in order to preserve their right to seek private school tuition reimbursement, id. at 372.

## CONCLUSION

For the reasons set forth herein and in their main Memorandum of Law, the proposed *Amici Curiae* organizations respectfully submit that under the Burlington and Connors decisions interpreting the language and intent of the IDEA, this Court should overrule the finding of the State Review Officer that a parent must make tuition payments to a private school before she may obtain payment from the school district.

Dated: New York, New York
　　　　August 11, 2008

Respectfully submitted,

*[signature]*　　　　　　　　　　　　　　*[signature]*

Shawn V. Morehead (SM 5428)　　　　　Michael D. Hampden (MH 2359)
Erika Palmer　　　　　　　　　　　　　Sandra Weinglass (SW 8646)
Arlen Benjamin-Gomez　　　　　　　　Erin K. McCormack
Miranda Johnson (MJ 9281)　　　　　　Partnership for Children's Rights
Advocates for Children of New York　　　271 Madison Avenue, 17th Floor
151 W. 30th Street, 5th Floor　　　　　New York, New York 10016
New York, New York 10001　　　　　　Tel: (212) 683-7999
Tel: (212) 947-9779

*[signature]*

Yisroel Schulman (YS 3107)
Laura Davis (LD 8226)
New York Legal Assistance Group
450 West 33rd Street, 11th Floor
New York, New York 10001
Tel: (212) 613-5040

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of<br>STEPHANIE WARREN, Parent of Disabled Child<br>MICHAEL WARREN,<br><br>Plaintiff,<br><br>- against -<br><br>NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>Defendant. | 07 CV 9812 (JGK)<br><br>Certificate of Service |

    The undersigned hereby certifies under penalty of perjury that on the 11th day of August, 2008, he mailed via first class mail the attached Responding Memorandum of Law *Amici Curiae* to the attorneys for the plaintiff and the defendant:

Anton Papakhin, Esq.
Tikhomirov & Roytblat, PLLC
Attorney for Plaintiff
1400 Avenue Z, Suite 403
Brooklyn, NY 11235

Michael A. Cardozo
Corporation Counsel of the City of New York
Attorney for Defendant
100 Church Street, Room 2-305
New York, NY 10007
Attn: Alan D. Rosinus, Jr., Esq.
Assistant Corporation Counsel

_____
Michael D. Hampden (MH 2359)
Partnership for Children's Rights
271 Madison Avenue, 17th Floor
New York, New York 10016
Tel.: (212) 683-7999