UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Stephanie Warren,
Parent of Disabled Child Michael Warren

                                          Docket No.
                Plaintiff       07-Civ-09812 (JGK)

      -against-


New York City Department of Education,

                Defendant
------------------------------------------------------------X


**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION AND
CROSS-MOTION FOR SUMMARY JUDGMENT**

Tikhomirov & Roytblat, PLLC
Anton Papakhin (AP 4680) of Counsel
Attorneys for Plaintiffs
1400 Avenue Z– Suite 403
Brooklyn, NY  11235
Tel: 718.376.9500 or 917.270.1403
Fax: 718.676.5649

Timothy M. Mahoney (TM 9672)
Law Office of Timothy Mahoney
P.O. Box 6451
Astoria, New York 11106
Tel: 646.522.8520
Fax: 718.204.7564

**TABLE OF CONTENTS**

**I.      PRELIMINARY STATEMENT**……………………………………...…....………3

**II.     PLAINTIFF HAS STANDING TO INITIATE AN IMPARTIAL HEARING FOR AN AWARD OF TUITION COSTS**……………………...………..……………...4

**III.    PLAINTIFF PRESENTED A VALID CLAIM FOR DIRECT TUITION PAYMENT UNDER IDEA**……………………………………………………....…8

**IV.    DEFENDANT'S ARGUMENT WITH RESPECT TO PLAINTIFF'S FAILURE TO COMPLY WITH THE NOTICE REQUIREMENT HAS NOT BEEN PROPERLY RAISED BELOW**……………………………………………...........................…11

**V.     CONCLUSION**……………………………………………………………………11

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
```

Stephanie Warren,
Parent of Disabled Child Michael Warren

                          Plaintiff

        -against-

New York City Department of Education,

                          Defendant

```
------------------------------------------------------------X
```

Docket No.
**07-Civ-09812 (JGK)**

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION AND CROSS-MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Defendant argues in its motion that, when reduced to its must pure form, plaintiff's appeal lives or dies on the interpretation of her enrollment agreement with Bay Ridge. In essence defendant argues that plaintiff lacks standing to bring <u>Connors</u> claim for direct tuition payment because she is not obligated to pay it. Furthermore, defendant makes nonsensical argument that <u>Connors</u> relief of prospective funding is limited to parents' whose "financial circumstances eliminate the opportunity for unilateral placement in the non-approved school." (Defendant's Memorandum of Law at 11). Since Bay Ridge accepted and educated Michael during the 2005-2006 school year, plaintiff fails to state a valid claim under the IDEA. Defendant argues that irrespective of whether or not plaintiff owes tuition to Bay Ridge and irrespective whether or not plaintiff sustained her burden of proof under <u>Burlington/Carter</u> and their progeny, this Court is not authorized to grant an award of direct tuition payment under the IDEA. Finally, defendant argues for the first time that equities in this case do not favor an award of tuition cost because plaintiff failed to give proper notice under the IDEA.

3

None of these arguments have a shred of merit. The record below is clear that plaintiff had standing to initiate the instant claim; there existed a valid Enrollment Contract for Michael's attendance at Bay Ridge; and that plaintiff at all times fully cooperated with defendant. Furthermore, the record is barren of any indicia that plaintiff's Enrollment Contract with Bay Ridge somehow waived Michael's due process rights to a FAPE or to seek tuition funding for an appropriate private school placement.

I. **PLAINTIFF HAS STANDING TO INITIATE AN IMPARTIAL HEARING FOR AN AWARD OF TUITION COSTS**

Defendant repeats the SRO's erroneous finding that plaintiff somehow lacks standing to seek an award of tuition payment to Bay Ridge after finding that plaintiff has standing to challenge the appropriateness of her son's IEP. It is undisputed that plaintiff is a parent of a child with a disability who absolutely has standing to challenge defendant's failure to provide FAPE to her child. Moreover, plaintiff has suffered an injury by incurring a debt to Bay Ridge, the private institution that appropriately educated Michael during his 10th grade year.

Defendant argues that plaintiff lacks standing because she has suffered no injury in fact. The Enrollment Contract, however, evidences that plaintiff has incurred a debt in order to provide Michael FAPE after the DOE failed to do so for his 10th grade schooling. This Court may direct the DOE to directly pay Michael's tuition coasts to Bay Ridge, which will in turn cancel out Mrs. Warren's debt to Bay Ridge under the Contract.

The Contract is a simple document. One page in length, its purpose is to get Michael into Bay Ridge for $26,350.00 per year (¶1). The Contract also states that Mrs. Warren need not pay tuition to Bay Ridge when Michael begins the school, for which Bay Ridge assumes as a risk

4

(¶4); that Mrs. Warren is in dire financial straits (¶2); and that she will cooperate in every way with Michael's CSE (¶¶ 4 and 5). Above the signature of Mrs. Warren the Contract states:

> PARENT(S) OR GUARDIAN'S SIGNATURE(S): (In the case of two parents both must sign)(In the case of divorced parents the parent **responsible for payments must sign**)      (emphasis added)

The plain language of the Contract requires the parent responsible for paying tuition to sign the enrollment agreement.  Furthermore, the Contract contained a provision, apparently the section that has engendered such controversy, which recognizes that plaintiff is dependent upon receiving prospective payment from the DOE and that Bay Ridge has "assumed the risk that Plaintiff may not receive **prospective** payment from the DOE or that said payment **will be delayed** beyond the term of the 2005-2006 school year." Id. (emphasis added). The Contract does not relieve plaintiff from her basic responsibility to pay the specified cost of the student's tuition.  Absent evidence to the contrary, there is no reason to find that the Contract means something different than it says.

The terms contained within the Enrollment Contract are not ambiguous. "If a writing, or the term in question, appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." John D. Calamari & Joseph M. Perillo, Contracts 166-67 (3d ed. 1987); *see also* Hunt Ltd. v. Lifschultz Fast Freight, Inc, 889 F.2d 1274, 1277-78 (2d Cir. 1989).  On the other hand, "if the term in question does not have a plain meaning it follows that the term is ambiguous." Calamari & Perillo at 167.  "Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." Burger King Corp. v. Horn & Hardart Co, 893 F.2d 525, 527 (2d Cir. 1990) (citing Curry Rd. Ltd. v. K mart Corp., 893 F.2d 509, 511 (2d Cir. 1990).  Contractual language should be

deemed to be unambiguous "if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Hunt, 889 F.2d at 1277 (quoting Breed, 46 N.Y.2d at 355, 385 N.E.2d at 1282, 413 N.Y.S.2d at 355).

      The Enrollment Contract is unambiguous in its terms, clearly stating that plaintiff is responsible for Michael's tuition at Bay Ridge for his 10th grade year.  Here, the Court should not consider any extrinsic evidence that the Contract means something other than its unambiguous terms state.  Moreover, the Court should not give any weight to defendant's unsupported argument that the Contract contains some hidden intention of plaintiff and Bay Ridge to defraud the New York City Department of Education.  Such an interpretation would result in the Enrollment Contract meaning something opposite than what is written.  Defendant submits no evidence to support its allegations.  No third party has paid Michael's tuition at Bay Ridge, and Bay Ridge has not waived its right to receiving the money from Michael's parent.  Were this Court to reject plaintiff's appeal, she will certainly be required to pay Bay Ridge for Michael's 2005-2006 tuition costs. This is money plaintiff simply does not have.  There is no provision in the IDEA that requires a parent to bankrupt herself merely to provide her child with the education at all times the school district was required to provide.  To adopt the DOE's worldview would be to insist that the IDEA's FAPE guarantees only apply to those families wealthy enough to cover a school district when they fail in their duty to provide an education, wealthy enough to step into the shoes of a multi-million dollar school district and take on the mantle of educator.

      Defendant argues in its papers that the Enrollment Contract is in fact evidence of a tuition scholarship.[1] (See Defendant's Memorandum of law at 9). We agree that had Michael been

---

[1] It is a simple task to make an allegation with no reference to the underlying record. Here, a full hearing was conducted under the IDEA in which both sides were represented by advocates.  Each side had the opportunity to

awarded a scholarship, his mother would be preceded from pursuing the instant action. However, the first time plaintiff learned Michael had received a scholarship to Bay Ridge was in defendant's papers.

Not one single witness testified that Michael received a tuition scholarship. Not one single piece of evidence suggests that the contract is something other than what it appears to be on its face: a tuition agreement for Michael's attendance at Bay Ridge. Moreover, defendant failed to make any such argument at the underlying impartial hearing that the Contract was a sham and that plaintiff had no duty to pay tuition to Bay Ridge if her demand for due process failed. We respectfully request that the Court take notice of the fact of that Defendant's defense in this matter appears to be premised on unsupported allegations fabricated whole with no support or reference in the record.

## II.   PLAINTIFF PRESENTED A VALID CLAIM FOR DIRECT TUITION PAYMENT UNDER IDEA

Defendant further argues that <u>Connors</u> relief is limited to parents' whose "financial circumstances eliminate the opportunity for unilateral placement in the non-approved school." (Defendant's Memorandum of Law at 11). Since Bay Ridge accepted and educated Michael during the 2005-2006 school year, plaintiff fails to state a valid claim under the IDEA. In essence defendant argues that this Court is not authorized to grant an award of direct tuition payment under the IDEA.

Applying <u>Burlington/Carter</u> 3 prong test, federal courts have long recognized that the equitable relief of prospective tuition payment may be necessary to ensure that certain children

---

present whatever witnesses and evidence they thought best for their respective sides, and each party had the opportunity to cross-examine every witness. For the DOE to claim that the agreement is something other than what it is described by the testimony elicited at hearing, or other than what it is on its face, is to force petitioner to disprove a negative.

with disabilities receive a FAPE, without regard to their parents' financial situation. In <u>Connors v. Mills</u>, 34 F. Supp.2d 795 (NDNY 1998), a district court found in dicta that prospective payment of tuition to a non-approved private school is another available remedy under the IDEA if a child would otherwise be denied a FAPE and her parents can show that they are financially unable to pay the tuition and seek reimbursement. The court found the difference between reimbursement and prospective tuition funding is an issue of "<u>the time of payment</u>" and "<u>is relevant to the fact of payment</u>." Id. at 805.

>The Connors court held:
>
>By prohibiting prospective placement, [the state] would deny assistance to families that are not able to front the cost of a private non-approved school, without exception. Under Defendants' reading of the IDEA, therefore, even in a situation…where both the school and the parent agree that the child's unique needs require placement in a private non-approved school and that there are no approved schools that would be appropriate, a destitute child would be left in an inappropriate program because the parents would not be able to front the tuition of private placement…It simply cannot be the case that an act designed to grant "all" disabled children access to needed services would undermine that very goal by making such access dependent a family's financial situation.

Id., at 804 (emphasis supplied). See also, <u>Sabatini v. Corning-Painted Post Area Sch. Dist</u>., 78 F. Supp.2d 138 (WDNY 1999). The court in <u>Sabatini</u> issued an injunction requiring a school district to pay prospectively for a child with a disability to attend a non-approved private school, finding that the fact that parents sought direct payment of their child's tuition, rather than reimbursement under Carter, was a "distinction without a difference…since the ultimate issue in [both cases] is the same: whether the school district can be made under the IDEA to disburse funds to cover a child's cost of education at a private school." Id., at 142 n.1.

In <u>Draper v. Atlanta Ind. Sch. System</u>, 518 F.3d 1275, 2008 WL 603280 (CA 11 2998), the 11th Circuit Court of Appeals found that a student was entitled to prospective funding in a private school as compensatory education for a school district's failure. The court rejected the

8

school district's argument that prospective payment was tantamount to damages and found that the school district's argument would provide wealthy families greater benefits under the IDEA than poor families:

> If Draper's family had unilaterally placed him in the [private school], then an award of reimbursement would be appropriate under the Act. (citations omitted). The district court found that the School System had failed to provide Draper an adequate educational program, and the district court concluded that the Cottage School offered an appropriate placement. If the district court could not prospectively award Draper a placement in a private school, Draper would be worse off with an award of prospective education than he would be with a retroactive award of reimbursement for the same violations of the Act. The Supreme Court has recognized that "conscientious parents who have adequate means" will place their child in private school if they are "reasonable confident of their assessment" that an educational program at a public school is inadequate (citations omitted). The argument of the School System would provide those wealthier parents greater benefits under the Act than poorer parents.
>
> We do not read the Act as requiring compensatory awards of prospective education to be inferior to awards of reimbursement. The Act does not relegate families who lack the resources to place their children unilaterally in private schools to shouldering the burden of proving that the public school cannot adequately educate their child before those parents can obtain a placement in a private school. The Act instead empowers the district court to use discretion to fashion appropriate equitable relief. Id. at 1286.

The distinction between the instant claim and Connors where the claim was brought prior to the student's placement and attendance of the private school is without difference since the ultimate issue in both cases is the same: whether the school district offered a child a FAPE and whether a private placement is appropriate to meet a child's needs. Even in a case where hearing officers or judges are open to ordering prospective tuition, parents still face huge logistical challenges. In order for a parent without financial resources to try to bring a tuition case, she has to first find a non-public school like Bay Ridge willing to consider accepting the child without a substantial deposit and on a contingency basis. Even if a parent is lucky enough to find a school willing to take a chance on her child, in order for a parent to obtain the tuition award she will have to find an educational advocate or a low-cost attorney in order to proceed with an impartial

hearing.  Due to the fact that administrative process may take a long time, parents typically request direct payment to a private school as oppose to prospective relief.  Regardless of whether parents request prospective funding or direct tuition payment, the standard that hearing officers and courts use is exactly the same in that both matters follow the <u>Burlington/Carter</u> prongs.  Defendant's attempt to limit <u>Connors</u> relief to situations where a parent's "financial circumstances eliminate the opportunity for unilateral placement in a non-approved school" must fail.

### III.  <u>DEFENDANT'S ARGUMENT WITH RESPECT TO PLAINTIFF'S FAILURE TO COMPLY WITH THE NOTICE REQUIREMENT HAS NOT BEEN PROPERLY RAISED BELOW</u>

Defendant argues that the notice issue was properly raised before the SRO because the Verified Petition contained a paragraph indicating that "tuition reimbursement may be reduced or denied when parents fail to raise the appropriateness of an IEP in a timely manner" and cited 20 U.S.C. § 1412(a)(10)(C)(iii), the provision of the IDEA that includes the notice requirement (See footnote 5 Defendant's Memorandum of Law at p.11).  However, defendant's mere statement of the statute doesn't raise the argument on appeal.  In fact, defendant does not even argue that plaintiff failed to comply with the statute in its Verified Petition.  Defendant's argument with respect to equitable considerations before the SRO was limited to the fact that plaintiff never intended to place her son in the public program.  Therefore, defendant's argument concerning the notice requirement has been expressly waived.

### <u>CONCLUSION</u>

This Court is authorized to order a direct payment to Bay Ridge when a parent cannot afford to pay tuition for a placement and without receiving services from the placement the child

would not receive an appropriate education. Defendant identifies the key question for the Court to resolve is whether plaintiff signed a tuition agreement that requires her to pay tuition. She did. In order for defendant to prevail, they must create facts that show the Enrollment Contract means something radically different than what it says. However, the record is a barren wasteland of any indication that plaintiff was not the person ultimately responsible for paying Michael's tuition. Her uncontradicted testimony, along with the Enrollment Contract, shall be given full weight and credibility.

For the reasons stated above, we request that the Court reverse the decision of the State Review Officer and reinstitute the holdings of the Impartial Hearing Officer in which defendant was ordered to directly fund the student's tuition at Bay Ridge during the 2005-2006 school year, and whatever further relief the Court deems appropriate.

Dated: Brooklyn, New York
       August 11, 2008

                                                Respectfully submitted,

                                                _____
                                                Tikhomirov & Roytblat, PLLC
                                                By: Anton Papakhin (AP 4680)
                                                Attorneys for Plaintiffs
                                                1400 Avenue Z– Suite 403
                                                Brooklyn, NY  11235
                                                Tel: 718.376.9500 or 917.270.1403
                                                Fax: 718.676.5649

                                                       -and-

                                                Law Office of Timothy Mahoney
                                                By: Timothy M. Mahoney (TM 9672)
                                                P.O. Box 6451
                                                Astoria, New York 11106
                                                Tel: 646.522.8520
                                                Fax: 718.204.7564