UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

In the Matter of Stephanie Warren, Parent of Disabled
Child Michael Warren,

                                                                07 CV 9812 (JGK)
                                        Plaintiff,

                -against-

New York City Department of Education,

                                        Defendant.

------------------------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF ITS <u>MOTION FOR SUMMARY JUDGMENT</u>

MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
David A. Rosinus, Jr.
Attorney for Defendant
100 Church Street, Room 2-305
New York, New York 10007
(212) 788-8316

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

POINT I........................................................................................................... 2

    PLAINTIFF LACKS STANDING BECAUSE THE ENROLLMENT CONTRACT
    RELIEVES HER OF ANY FINANCIAL RESPONSIBILITY FOR TUITION

POINT II ......................................................................................................... 5

    SINCE PLAINTIFF IS NOT RESPONSIBLE FOR PAYMENT, PLAINTIFF HAS NO
    CLAIM UNDER THE IDEA

POINT III ....................................................................................................... 7

    THE AMICUS ORGANIZATIONS' ARGUMENT IS INAPPOSITE

POINT IV ...................................................................................................... 11

    THE SRO CORRECTLY HELD THAT EQUITABLE CONSIDERATIONS DO NOT
    SUPPORT PLAINTIFF'S CLAIM FOR TUITION COSTS

      A.    The SRO Properly Applied the Notice Requirement................................. 11

      B.    The Balance of the Equities Favors Defendant........................................ 14

CONCLUSION....................................................................................................... 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

In the Matter of Stephanie Warren, Parent of Disabled
Child Michael Warren,

                                                                  07 CV 9812 (JGK)
                                            Plaintiff,


                     -against-


New York City Department of Education,

                                            Defendant.

------------------------------------------------------------------------ x


**DEFENDANT'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND IN
FURTHER SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Plaintiff herein seeks tuition costs of $26,350.00 for private school tuition for the

2005-06 school year, despite the fact that Plaintiff never paid such amount, does not owe that

amount, and never will be required to pay such amount to the private school pursuant to the

contract she entered with the school.  As explained more fully below, Plaintiff's argument that

the enrollment contract does not actually relieve her of her tuition obligation is without merit, as

the plain language of the contract is clear—Plaintiff has no financial obligation to the school.

Because Plaintiff thus lacks standing, her Complaint should be dismissed.  Further, Plaintiff's

argument that the IDEA provides a claim for tuition costs even when the parent has not paid any

tuition money and owes no tuition money is unsupported by law.  Finally, even if the Court were

to determine that Plaintiff has standing to bring a claim for tuition costs, and that such claim does

not fail because of the language of the contract, tuition costs still should not be awarded because

Plaintiff cannot sustain her burden to demonstrate that the equities favor an award of tuition costs.

## **ARGUMENT**

### **POINT I**

**PLAINTIFF LACKS STANDING BECAUSE THE ENROLLMENT CONTRACT RELIEVES HER OF ANY FINANCIAL RESPONSIBILITY FOR TUITION**

Fundamental to the theory of standing in any action, whether under the IDEA or otherwise, is the fact that in order to be able to recover, a plaintiff must establish that she has been aggrieved and that the sought-after remedy would make her whole. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). In this case, Plaintiff has not been aggrieved. She has not paid tuition to Bay Ridge Preparatory School ("Bay Ridge"), nor is she obligated to pay tuition to Bay Ridge in the future. Indeed, the enrollment contract ("the contract") between Plaintiff and Bay Ridge for the school year in question essentially provides that she need not pay any tuition, but that she should attempt to obtain money from the New York City Department of Education ("Defendant" or "DOE") through the administrative process and that any tuition payment must then be made directly to Bay Ridge. The SRO correctly found that the nature of this agreement precluded an award of tuition costs, since Plaintiff incurred no "financial burden in this matter." Application of the New York City Department of Education, Appeal No. 07-032 ("SRO Decision") at 6. Now, in an attempt to avoid dismissal before this Court, Plaintiff asserts that, notwithstanding the plain language of the contract, it is her "understanding" that she is "legally responsible" for the payment of tuition. Warren Aff. ¶ 17. Plaintiff's self-serving interpretation of the contract is without merit and is insufficient to establish standing here

Specifically, in Point II of her Memorandum of Law, Plaintiff seems to argues that nothing in the enrollment contract precludes Bay Ridge from seeking tuition payment from Plaintiff if payment from the DOE is not secured.  Pl.'s Memo. at 13.  However, the plain language of the contract clearly relieves Plaintiff of any obligation to pay tuition.  Paragraph 2 of the contract states that Plaintiff "is dependent upon receiving prospective payment from the [Defendant] . . . in order to make the payment of tuition" for the 2005-06 school year.  2005-06 Enrollment Contract, Parent's Exhibit B ("Contract, Exh. B") ¶ 2 (emphasis added).  Paragraph 4 of the contract states that "Bay Ridge has assumed the risk that the [Plaintiff] may not receive prospective payment from the DOE or that said payment will be delayed beyond the term of the 2005-2006 school year."  Id. ¶ 4 (emphasis added).  When read in conjunction with one another, these paragraphs unambiguously relieve Plaintiff of any obligation to pay tuition.  Put simply, the contract says that Plaintiff must receive payment from the DOE in order to pay tuition and that, if payment is not received from the DOE, Bay Ridge will incur the loss.[1]  Any other reading strains credulity.

In an attempt to overcome the plain language that appears in the body of the contract, Plaintiff argues, in effect, that the form language above the contract's signature block should supersede the provisions of the contract's substantive paragraphs.  Specifically, Plaintiff asserts that the language, which states in part that "'the parent responsible for payments must sign,'" demonstrates that Plaintiff is ultimately under legal obligation to pay tuition costs.  Pl.'s Memo. 13-14 (quoting the contract).  Plaintiff fails to mention that this phrase appears as part of

---

[1] Both the Impartial Hearing Officer ("IHO") and the SRO reached this conclusion.  See IHO Decision at 10 ("[Plaintiff] encountered no financial risk whatsoever in placing [the] Student at Bay Ridge.  Rather, it was Bay Ridge itself that assumed all financial risk . . . ."); SRO Decision at 6 ("I [] concur with the impartial hearing officer's reading of the plain language of the contract, which stated that Bay Ridge assumed the risk of nonpayment if [Plaintiff] agreed to cooperate in efforts to secure funding from [Defendant].") (citations omitted).

what is clearly boilerplate language, which states in full: "(In the case of two parents both must sign) [Line break] (In the case of divorced parents the parent responsible for payments must sign)."  Contract, Exh. B.  This language on its face was not tailored for this particular contract or this particular student's circumstances, since it does not evince awareness that in the Student's case only one parent would be signing.  Moreover, the language's purpose is to clarify which parent(s) should sign if only one or the other is financially responsible, not to assign financial responsibility between the parent(s) and Bay Ridge.  In this sense the mention of parental responsibility for payments is incidental.  All in all, the language cannot reasonably be construed to obligate Plaintiff to pay tuition and thereby override the plain language of the body of the contract, which relieves her of that obligation.

In her affidavit, submitted to this Court as additional evidence, Plaintiff states that "[i]t has always been my understanding that I remain legally responsible for paying the Bay Ridge tuition if I am not ultimately successful in obtaining an order requiring the DOE to pay it."  Warren Aff. ¶ 17.  Plaintiff also states that, "based on the State Review Officer's . . . decision, I am indebted to Bay Ridge for the full tuition amount for the 2005-2006 school year," id. ¶ 41, in spite of the fact that the SRO's decision itself found that she was not responsible for tuition payment.  SRO Decision at 6; see also supra note 1.  However, when a contract's language is plain and unambiguous, its interpretation is a question of law.  See, e.g., Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 139 (2d Cir. 2000).  Thus, Plaintiff's alleged current understanding is irrelevant.

Because Plaintiff has paid no money and is under no obligation to pay any money for the Student's 2005-06 tuition, she is not an aggrieved party and therefore lacks standing to

pursue this action.  See generally Defendant's Memorandum of Law in Support of Its Motion for

Summary Judgment ("Def.'s Memo.") 6-11.

## POINT II

### SINCE PLAINTIFF IS NOT RESPONSIBLE FOR PAYMENT, PLAINTIFF HAS NO CLAIM UNDER THE IDEA

While Plaintiff initially argues in her Memorandum of Law that she is responsible

for the payment of tuition under the contract, Plaintiff then goes on to argue that, even if she is

not, the IDEA nevertheless provides for a claim for tuition costs.  See Pl.'s Memo. Point III.  In

support of this argument, Plaintiff relies on the Supreme Court's holding in Florence County

Sch. Dist. v. Carter, which states that the Court has "broad discretion" to "grant such relief as [it]

determines appropriate."  Pl.'s Memo. 14.  Citing to Carter, Plaintiff further states that such an

award is appropriate "even if the court finds that the parent was relieved of financial obligations

in connection with her child's tuition to the facility."  Id. 14-15 (citing Florence County Sch.

Dist. v. Carter, 510 U.S. 7, 16 (1993)).

Remarkably, a review of the citation provided by Plaintiff provides no such

holding, let alone dicta.  What the Supreme Court does hold at the citation relied on by plaintiff

is that "equitable considerations are relevant in fashioning relief."  Carter, 510 U.S. at 16.  In a

case such as this one, where Plaintiff is not actually responsible for any payment of any tuition,

equitable considerations do not support awarding her tuition costs.  Likewise, to the extent that

Plaintiff relies on the Northern District's holding in Connors v. Mills, 34 F. Supp. 2d 795, 805-

806 (N.D.N.Y. 1998), as providing for the remedy of tuition costs when no tuition payment is

due at all, such reliance is misplaced.  The court in Connors was faced only with the question of

whether the IDEA (and the Supreme Court rulings in Burlington and Carter) precludes an award

5

of prospective tuition payment, where a parent owes tuition money but has yet to pay.  Connors does not address the issue at bar—whether the IDEA permits an award to a parent who owes no money.

Plaintiff's assertion that refusing to permit relief in the form of tuition costs, even if Plaintiff owes no tuition money, would "defeat the objectives of the IDEA to provide a 'free' and 'appropriate' education," Pl.'s Memo. 15, is simply wrong.  The Student in this case attended Bay Ridge during the 2005-06 school year at no cost or financial obligation to Plaintiff. So refusing to grant relief here manifestly would not defeat the purpose of the IDEA, since the Student has already received what Plaintiff asserts to be a "free" and "appropriate" education for the year in question.  What remains is that there is no injury in fact, and the IDEA should not be construed to provide relief in such a case.

Despite Plaintiff's attempt to draw distinctions, the Fourth Circuit's decision in Emery v. Roanoke City School Board supports this analysis.  In Emery, the plaintiff student received private educational services paid for by his parent's insurance company.  Emery v. Roanoke City Sch. Bd., 432 F.3d 294, 299 (4th Cir. 2005).  The plaintiff's parent paid no money for the educational services and suffered no diminution of his lifetime insurance benefits.  Id. at 299-300.  The Fourth Circuit held that, "[s]ince plaintiff has no legally cognizable injury in fact, he has no standing to sue for reimbursement."  Id. at 300; id. at 299 ("[R]eimbursement should flow only to those who actually expend resources . . . .").  Without an injury in fact, the plaintiff in Emery had no legal claim of his own to assert.  Although Plaintiff is correct that the plaintiff in Emery sought a "windfall," id. at 299, while she does not, that fact was not dispositive of the case.  The dispositive fact in Emery was that, as in this case, the plaintiff suffered no financial

loss and was not in any financial debt. Thus, the SRO properly relied on <u>Emery</u> when he found that Plaintiff was not asserting a valid claim in this case.[2]

Plaintiff has cited to no authority to support her argument that the IDEA provides for a claim of tuition costs even when the parent owes no money. Accordingly, her Complaint should be denied for failure to state a claim under the IDEA.[3]

**POINT III**

**THE AMICUS ORGANIZATIONS'
ARGUMENT IS INAPPOSITE**

The Amicus organizations appear in the instant action asserting that the SRO's decision should be reversed, insofar as the SRO allegedly found that tuition costs can only be awarded for payment "already made." Amicus Brief ("Am. Br.") 1. But the Amicus organizations erroneously characterize the SRO holding in this case as determining that "parents have no right under the IDEA to request an order that a school district pay tuition directly to a private school." <u>Id.</u> at 6; <u>see</u> <u>id.</u> at 20. The Amicus organizations have misconstrued the SRO's decision and holding. This case does not address whether "direct payment" is permissible under the IDEA, but whether a parent may obtain tuition costs for money she does not owe at all.

"Direct payment," which is apparently of concern to the Amicus organizations, occurs when a parent is asked by a private school to pay tuition before the school year begins as

---

[2] Plaintiff also asserts that the SRO erroneously relied on <u>Malone v. Nielson</u> when finding that Plaintiff does not state a claim on her child's behalf. However, <u>Malone</u>'s IDEA-related holding merely stands for the proposition that "a reimbursement claim belongs to [the] party . . . who actually expended resources," <u>Malone v. Nielson</u>, 474 F.3d 934, 937 (7th Cir. 2007) (<u>citing</u> <u>Emery</u>) (internal quotations and brackets omitted), and is relevant here because Plaintiff has not expended any resources.

[3] On pages 16-17 of her brief, Plaintiff appears to argue that, because the SRO has required proof of payment in another case, the SRO is personally "biased" against prospective tuition payment. This argument lends no further legal guidance on the issue. The fact that Plaintiff believes that the SRO's decision in another case was unsupported by law is of no moment. Insofar as any of the SRO decisions cited by Plaintiff or by the Amicus organizations, Amicus Brief 6 n.2, were based upon the purported invalidity of prospective direct tuition payment under the IDEA, they did not deal with the issue raised here. In those cases, by definition, the petitioners actually did owe the school tuition. As discussed more fully in Point III, <u>infra</u>, this Court need not adjudicate the question of whether the IDEA provides a remedy for prospective tuition payment.

7

a condition of her child's attendance at the school, when the parent is able to adduce admissible evidence that she is financially unable to pay tuition, and when, instead of seeking reimbursement under the IDEA, the parent seeks prospective payment to be paid directly to the parent's creditor, the private school.  Unlike in the case at bar, such parent is the private school's debtor, and still incurs the risk that she will have to pay tuition, should she lose her claim for tuition payment.  The case at bar, and the SRO's underlying ruling, does not raise the issue that the Amicus organizations seek to argue, since the SRO's ultimate decision in this matter was based upon the parent's lack of responsibility for payment under the enrollment contract, not upon the validity or invalidity of direct payment under the IDEA.   Thus, the Amicus organizations' arguments are inapposite.

The SRO, concurring with the IHO's finding, found that Plaintiff did not have to pay tuition at all because the enrollment contract she signed with Bay Ridge for the 2005-06 school year relieved her of all financial responsibility.  SRO Decision at 5-6.  Because of this finding, the SRO held that Plaintiff had no cognizable claim.  Id. at 6.  That is, regardless of what remedies were available to Plaintiff under the IDEA, Plaintiff had no claim in the first place because she had not "incurred a financial burden."  Id. at 6.  The validity of direct payment was not a dispositive or even a particularly relevant factor.[4]

The confusion of the Amicus organizations on this point is most apparent when they assert that the SRO "create[d] a requirement that the parent must suffer an out-of-pocket loss for the services provided by Bay Ridge."  Am. Br. 9 (internal quotations omitted).  This assertion misses the point.  The point, according to the SRO, was not that Plaintiff had suffered

---

[4] Indeed, the "declar[ation]" that the Amicus organizations request this Court to make, stating that the SRO's supposed "prohibition against direct tuition payments to private schools is mistaken as a matter of law," Am. Br. 6, would not even change the outcome of this case, provided that the Court agrees with the SRO that Plaintiff has no financial responsibility to pay tuition for the 2005-06 school year.

no out-of-pocket loss per se; it was that Plaintiff owed no tuition money to Bay Ridge at all.  See SRO Decision at 6.  The dispositive distinction, in other words, is not between a parent who has paid and a parent who has yet to pay; it is between a parent who is financially responsible to pay tuition versus a parent who has been completely relieved of that responsibility.  The Amicus organizations are inveighing against a ruling that the SRO did not actually make in this case.

The Amicus organizations are concerned that a finding against the parent in this case will undermine the rights of low-income families because, the Amicus organizations assert, it will establish a rule disallowing direct payment to private schools when a parent's child is denied a free, appropriate public education ("FAPE") and a parent is unable to front tuition payment, and the child will thus be unable to attend an appropriate private placement.  See, e.g., Am. Br. 1 (issue in this case is whether a hearing officer or court may "order a school district to make direct payments to an appropriate private school where the parent cannot afford to advance the tuition payments and later seek reimbursement"); see also id. 11 (stating that "[l]ow-income families should not be foreclosed from the private-school [sic] option solely because of their economic circumstances.").

First, as discussed above, the SRO properly held that the IDEA requires that a parent have some financial obligation to pay tuition in order to have a valid claim for tuition costs, regardless of the family's income level.  Moreover, the facts of this case are readily distinguishable from the scenario contemplated by the Amicus organizations.  In that scenario, a private school demands that a parent whose child has been denied a FAPE pay tuition up front, before the school year begins, in order for the child to attend the private school and receive an appropriate education.  In this case, however, the Student was able to attend Bay Ridge, and to receive an appropriate education, without Plaintiff fronting any tuition payment at all.

9

According to the dicta set forth by <u>Connors v. Mills</u>, upon which the Amicus organizations largely rely, prospective direct payment could only be plausibly permitted where a parent's "financial circumstances <u>eliminate the opportunity for unilateral placement</u> in the non-approved school." <u>Connors v. Mills</u>, 34 F. Supp. 2d 795, 805-806 (N.D.N.Y. 1998) (emphasis added). That is manifestly not the case here, where Plaintiff placed the Student at Bay Ridge, the school accepted him, and he attended.[5]

While it is true, as the Amicus organizations argue, that several federal courts have at least suggested that prospective direct payment may be proper under the IDEA when a parent must front tuition payment and cannot afford to, Am. Br. 11-13, neither the Amicus organizations nor Plaintiff cite a single case in any court in which <u>retrospective</u> direct payment was granted because the parent's child had already attended the private school and the parent had not paid any tuition money to date. In other words, direct payment that is made before the relevant school year and in lieu of reimbursement so that a child may receive an appropriate education may be an appropriate remedy under the IDEA, but direct payment that is made after the relevant school year because a parent has incurred no reimbursable debt in the first place is not.

One can conceive of a case in which the concerns and arguments raised by the Amicus organizations are relevant, but this case is not it. In this case, Plaintiff has no claim because her child has already received an appropriate education and she owes no money.

---

[5] Furthermore, <u>Connors</u> requires that a parent demonstrate that she is unable to front the tuition for the private placement. <u>Connors</u>, 34 F. Supp. 2d at 806. However, Plaintiff did not assert that she was unable to pay Bay Ridge's tuition in her due process notice. <u>See</u> IHO's Exhibit I. She is therefore barred from raising that allegation here. <u>See</u> cases discussed <u>infra</u> note 6. Thus, the facts of this case are distinguishable from the scenario in which the <u>Connors</u> court would grant relief in this regard, as well.

## POINT IV

## THE SRO CORRECTLY HELD THAT EQUITABLE CONSIDERATIONS DO NOT SUPPORT PLAINTIFF'S CLAIM FOR TUITION COSTS

Even if this Court were to find that Plaintiff has standing to pursue a claim for tuition costs or that such a claim exists even where no money is owed (which it should not), the Court still should deny Plaintiff's request for tuition costs because Plaintiff did not comply with the applicable notice requirement and because equitable considerations on the whole do not support such an award.

### A.    The SRO Properly Applied the Notice Requirement

In Point I of her Memorandum of Law, Plaintiff argues that the SRO's holding should be reversed for two reasons. First, Plaintiff argues that the notice requirement was raised sua sponte and that the DOE had failed to raise it below. Pl.'s Memo 7-10.  Second, Plaintiff argued that the ten day written notice requirement that the SRO relied upon was inapplicable.  Id. 10-11.

Plaintiff's allegation that the DOE did not argue the notice requirement before the SRO is simply incorrect.[6]  In paragraph 72 of the DOE's Verified Petition to the SRO, the

---

[6]  The cases cited by Plaintiff holding that administrative officers and courts may not review issues beyond the scope of the due process notice, see Pl.'s Memo. 9-10, are not relevant here.  Although the plaintiff in IDEA cases must raise all issues in her due process notice in order for them to be addressed during administrative and legal proceedings, no such reciprocal obligation on defendant school districts exists.  See, e.g., Application of a Child with a Disability, Appeal No. 07-066, at 2 n.3 (stating that "the purpose of the sufficiency requirement is to ensure that the other party, which is generally the school district, will have an awareness and understanding of the issues forming the basis of the complaint . . . [and to] give school districts adequate notice to be able to defend their actions at due process hearings, or even to resolve the dispute without having to go to due process") (quoting S. Rep. 108-185, Individuals with Disabilities Education Act Senate Report No. 108-185, "Notice of Complaint" [Nov. 3, 2003]) (internal quotations omitted).  The governing regulations make clear that, on appeal, the only party precluded from raising claims not raised in the due process hearing request, or at hearing, is the party that initially made the due process hearing request.  See 20 U.S.C. § 1415(f)(3)(B), 8 N.Y.C.R.R. § 200.5(j)(1)(ii); see also 20 U.S.C. § 1415(c)(2)(E)(i).  In the instant case, Defendant raised only legal issues on appeal to the SRO and introduced no new facts.

DOE argued with respect to equitable considerations that the IDEA allows tuition reimbursement to be "reduced or denied when parents <u>fail to raise the appropriateness of an IEP in a timely manner</u>, fail to make their child available for evaluation by the district, or upon a finding of unreasonableness with respect to the actions taken by the parents." Defendant's Verified Petition ¶ 72 (emphasis added) (<u>citing</u> 20 U.S.C. § 1412(a)(10)(C)(iii)[7] <u>and</u> <u>M.C. v. Voluntown Bd. of Educ.</u>, 226 F.3d 60, 69 n.9 (<u>quoting</u>, in relevant part, 20 U.S.C. § 1412(a)(10)(C)(iii) and stating that the provision "appears to codify the previously recognized discretion of a court to reduce or bar reimbursement where parents fail to raise the appropriateness of an IEP in a timely manner")). Directly addressing the DOE's argument on the equities, the SRO stated: "I note that there is no evidence in the record to indicate that [Plaintiff] provided timely notice of her rejection of the public school placement and her intent to enroll the student in a private placement at public expense." SRO Decision at 4. Following this, the SRO culled the relevant facts and referenced the statute that the DOE had cited to conclude that Plaintiff did not comply with the relevant notice requirement of the IDEA. In fact, then, the DOE explicitly raised Plaintiff's failure to raise the appropriateness of the Student's IEP in a timely manner and cited

---

[7] The relevant portion of 20 U.S.C. § 1412(a)(10)(C)(iii) reads as follows:

> (iii) Limitation on reimbursement
>
> The cost of reimbursement [for private educational services] . . . may be reduced or denied--
>
> (I) if--
>
> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>
> (bb) 10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in item (aa) . . . .

to the provision that codified that notice requirement. Thus, as the SRO correctly recognized, the notice issue was squarely before him on appeal. Plaintiff's claim that the SRO raised this issue sua sponte is therefore belied by the DOE Petition below and by the SRO's decision itself.

Second, Plaintiff's assertion that the SRO erroneously applied the ten day written notice requirement is without merit. Specifically, Plaintiff asserts that that provision only applies when a child has been removed from public school immediately preceding a parent's unilateral placement. Pl.'s Memo. 10-11. However, it is unnecessary to address the applicability of that provision to the instant case, because the SRO's decision is not based on that provision. Rather, the SRO states that "there is no evidence in the record to indicate that [Plaintiff] provided timely notice of her rejection of the public school placement and her intent to enroll the student in a private placement at public expense." SRO Decision at 4 (emphasis added). The emphasized portion of this statement tracks the language of 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(aa) in nearly verbatim fashion. See supra note 7 (quoting provisions (aa) and (bb) in relevant part). The notice requirement codified by provision (aa) stands wholly separate and apart from the notice requirement in (bb). See id. (provisions (aa) and (bb) are linked by the disjunction "or"). Thus, Plaintiff's argument regarding the inapplicability of the ten day written notice requirement codified in provision (bb) is irrelevant, because the SRO did not apply provision (bb).

Plaintiff makes no argument that provision (aa), which codifies the notice requirement that the SRO did rely upon for his equities holding, is inapplicable here. Indeed, the SRO's decision on the equities was proper in light of the evidence adduced at the IHO level and was consistent with the pertinent precedent of this Court and across a number of federal circuits. See SRO Decision at 4; infra sub point B; see also Def.'s Memo. Point III.

13

**B.      The Balance of the Equities Favors Defendant**

Even where a plaintiff has sustained her burden of proof with respect to Prongs I and II of the Burlington/Carter test, courts have routinely denied tuition reimbursement where, as here, a plaintiff does not give the public school system a meaningful opportunity to provide a FAPE.   In such cases, courts deny tuition reimbursement on the ground that equitable considerations do not support such an award.   See, e.g., Bettinger v. New York City Bd. of Educ., 2007 U.S. Dist. LEXIS 86116, at *23-24 (S.D.N.Y. Nov. 20, 2007) (holding that "a major consideration in deciding whether the third factor is satisfied is whether the parents have cooperated with the City throughout the process to ensure their child receive a FAPE" and stating that, if courts cannot read a failure to cooperate with the City as equitably disentitling a parent from receiving tuition reimbursement, the equities prong is "essentially meaningless").

As discussed more fully in Defendants' moving papers, Plaintiff's failure to provide appropriate notice under the IDEA should preclude an award on equitable grounds.   See Def.'s Memo. Point III.   Now, Plaintiff essentially argues that she should prevail on the equities because Defendant's failure to provide a FAPE should be the dispositive factor for Prong III. See Pl.'s Memo. 12 ("[T]he SRO failed to consider the relationship between the DOE's violations of the IDEA and the equitable considerations on prong three. . . .   [The] DOE took no steps to revisit the appropriateness of the offered program subsequent to being informed . . . that the student's psychoeducational evaluation was inadequate. . . .   Because the DOE failed to offer an appropriate educational program at the [June 2005] CSE review meeting, Plaintiff had no choice but to re-enroll her son at Bay Ridge for the 2005-2006 school year.").

To begin with, it is clearly misleading to assert that the finding of a denial of FAPE in Prong I is relevant to the equities analysis under Prong III.   The equities prong is not

14

even reached unless the SRO or court has already found a Prong I denial of FAPE, so every time that an SRO or a court analyzes the equities, it will do so when Prong I has already been determined in the plaintiff's favor. Thus, in order for the equities prong to have some substance of its own, Prong I's finding cannot be given more than perfunctory significance. Indeed, to hold that the Prong I determination can be the <u>only</u> dispositive factor weighing in Plaintiff's favor in the equities analysis, as Plaintiff essentially argues, would entirely collapse the first and third prongs of the <u>Burlington</u>/<u>Carter</u> test. If a plaintiff prevailed on the equities prong every time that her child had been denied a FAPE, then the equities prong would have no independent weight whatsoever.

Plaintiff is merely trying to evade discussing the facts that weigh so heavily against her. She was given a proposed public placement by the DOE at the CSE meeting of June 2, 2005, over three months before the start of the school year for which the placement had been offered. She did not inform the DOE at that meeting that she rejected its placement and would seek to place her child in private school at public expense. She signed a contract with Bay Ridge on August 15, 2005 that obligated her to refuse any placements offered by the DOE even though she still had not viewed the DOE's proposed placement and would not do so until October of 2005, well after the school year had already begun and after she had signed the contract that obligated her to reject that placement. She then rejected the placement by telling her advocate, but neither she nor her advocate contacted the CSE at that time to inform Defendant of her rejection of its placement and her intent to enroll the Student at Bay Ridge and seek payment from Defendant. She eventually filed her due process notice, the only written notice to

15

Defendant in the record, in January of 2006, roughly halfway through the school year in question.[8]

It is apparent from this chronology that Plaintiff never intended to enroll her child at any placement proposed by the DOE and so did not cooperate with the DOE's efforts to provide her child with a FAPE.  By failing to cooperate, Plaintiff denied Defendant of a fair opportunity to provide a FAPE to her child through a public placement.  See, e.g., Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 368 (1985) ("In several places the [IDEA] emphasizes the participation of the parents in developing the child's education program and assessing its effectiveness.").  Instead, Plaintiff tried to comply with the DOE's process just enough so that she could prevail on a reimbursement claim when her child continued to attend private school.  However, as this Court stated in Bettinger, "parents seeking reimbursement must comply with the law throughout the entire process and not merely to the point where they think they have achieved what they want." Bettinger, 2007 U.S. Dist. LEXIS 86116, at *26.  Because Plaintiff did not comply with the law throughout the process, and even placed her child in a private school before she had ever viewed the DOE's proposed placement, her conduct was unreasonable.  See 20 U.S.C. § 1412(a)(10)(C)(iii)(III); see also M.C., 226 F.3d at 69 n.9. Therefore, the SRO's holding that the equities preclude an award of tuition costs to Plaintiff was correct and should be affirmed.

## CONCLUSION

Based on the foregoing, Defendant New York City Department of Education respectfully requests that Plaintiff's motion for summary judgment be denied, that Defendant's

---

[8] Please see Def.'s Memo. Point III for citations of these facts.

motion for summary judgment be granted, and that Defendant be granted such other and further

relief as the Court deems just and proper.

Dated:        New York, New York
              August 11, 2008

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                         City of New York
                                        Attorney for Defendant
                                        100 Church Street, Room 2-305
                                        New York, New York  10007
                                        (212) 788-8316


                                        By:    _____s/_____
                                               David A. Rosinus, Jr. (DR 2311)
                                               Assistant Corporation Counsel



To:    Anton Papakhin (by ECF)
       Attorney for Plaintiff
       1359 Coney Island Avenue
       Brooklyn, New York 11230
       Tel.: (917) 270-1403
       Fax: (718) 252-2216



cc:    Timothy M. Mahoney (by ECF)
       Law Office of Timothy Mahoney
       P.O. Box 6451
       Astoria, New York 11106
       Tel.: (646) 522-8520
       Fax: (718) 204-7564

       Advocates for Children of New York, Inc. (by ECF)
       151 West 30th Street, 5th Floor
       New York, New York 10001
       Tel.: (212) 947-9779

Partnership for Children's Rights (by ECF)
271 Madison Avenue, 17th Floor
New York, New York 10016
Tel.: (212) 683-7999

New York Legal Assistance Group (by ECF)
450 West 33rd Street, 11th Floor
New York, New York 10001
Tel.: (212) 613-5040